**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Louis E. Gulley (B-18477), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 17 C 8209 |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| Wexford Health Sources, Inc., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Plaintiff Louis Gulley, an Illinois prisoner who is incarcerated at the Stateville Correctional Center, brings this *pro se* civil rights action, 42 U.S.C. § 1983, based on gynecomastia (enlarged male breast tissue and related symptoms) that he attributes to a psychiatric medication. According to Gulley, he was not warned of the potential for this side effect. Pending are Gulley's application to proceed *in forma pauperis*, his complaint for initial review, 28 U.S.C. § 1915A, and his motion for attorney representation.

*Application To Proceed In Forma Pauperis*

Gulley's application to proceed *in forma pauperis* demonstrates he cannot prepay the filing fee and is thus granted. Under 28 U.S.C. § 1915(b)(1)-(2), the Court orders: (1) Gulley to immediately pay (and the facility having custody of him to automatically remit) $14.48 to the Clerk for payment of the initial partial filing fee; and (2) Gulley to pay (and the facility having custody of him to automatically remit) to the Clerk twenty percent of the money he receives for each calendar month during which he receives $10.00 or more, until the $350 filing fee is paid in full. The Court directs the Clerk to ensure that a copy of this order is mailed to each facility where Gulley is housed until the filing fee has been paid in full. All payments shall be sent to the Clerk, United States District Court, 219 South Dearborn Street, Chicago, Illinois 60604, attn: Cashier''s Desk, 20th Floor, and shall clearly identify Gulley's name and the case number assigned to this case.

Gulley was previously granted leave to proceed *in forma pauperis* in *Gulley v. Stateville CC*, Case No. 17 C 7656 (N.D. Ill.) (Chang, J.). He is reminded that 28 U.S.C. § 1915(b)(2) requires a 20% monthly deduction for *each* case or appeal in

which he is allowed to proceed *in forma pauperis* until he pays all filing fees in full. *See Bruce v. Samuels*, — U.S. —, 136 S. Ct. 627, 632-33 (2016). As he is now proceeding *in forma pauperis* in two cases, the trust account custodian at Stateville will thus deduct 20% + 20%, for a **total of 40%**, each time his monthly balance exceeds $10 until the filing fees ($350 for each case, for a total of $700) are paid in full. The percentage will increase if Gulley is granted leave to proceed *in forma pauperis* in any additional federal cases or appeals, up to 100% of his account each month he receives at least $10.00. *See id.*

*Initial Review of Complaint*

Under 28 U.S.C. §§ 1915(e)(2) and 1915A(a), the court is required to screen a *pro se* prisoner's complaint to ensure that it states a valid claim against a defendant who is not immune from liability. *See Jones v. Bock*, 549 U.S. 199, 214 (2007); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). A complaint need only "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Under federal notice pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). At the screening stage, the Court assumes the truth of Plaintiff's allegations, *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013), and construes his *pro se* complaint liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

The Court begins by noting that Gulley's complaint frequently does not track the underlying medical records he attached as exhibits. When screening a complaint, the Court must consider the entire complaint, not just the facts that support a plaintiff's claim. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (applying the Rule 12(b)(6) motion to dismiss standard, which is also used when screening complaints). This "includes exhibits attached to the complaint or documents referenced in the pleading if they are central to the claim." *Id*. (citations omitted). "When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls." *Id*. The Court will thus summarize both the complaint's allegations and the corresponding portions of the attached medical records, and will construe Gulley's allegations generously, to the extent that they are not contradicted by his medical records. As Gulley decides how to proceed, he is warned that he is subject to Federal Rule of Civil Procedure 11, which provides that by signing a pleading, a party represents to the Court, among other things, that his factual contentions have evidentiary support or likely will have evidentiary support after further investigation. *See* Fed. R. Civ. P. 11(b). He is advised that if a more developed record shows that any of his submissions contain or contained knowing

2

factual misrepresentations, he may be subject to sanctions, up to and including dismissal of this action. With that said, the Court turns to the complaint.

According to Gulley, on April 22, 2015, Dr. Kelly (a mental health professional at Stateville) prescribed Risperdal, Remeron, and Depakote to treat Gulley's mental health issues but did not inform him about all of the potential side effects of these medications. R. 1 at 5. The medical records say that, as of April 22, 2015, Gulley was already taking these medications and believed they were helping, Dr. Kelly was monitoring Gulley's condition, and that Gulley weighed 248 pounds as of that date. *Id*. at 13. On June 17, 2015, Gulley had a follow-up appointment with Dr. Kelley; he says he complained about weight gain, restlessness, and tremors, while the progress notes say that side effects were dry mouth and diarrhea. *Id*. at 5, 16. Dr. Kelly documented a weight of 250 pounds and noted that Gulley wanted to stay on the same dose of his medications. On September 23, 2015, Gulley complained to Dr. Kelly about weight gain, restlessness, and tremors. *Id*. at 5. The corresponding medical records noted a weight of 245 pounds and Gulley's belief that the medications were continuing to help him. *Id*. at 17. In the area for recording side effects, Dr. Kelly wrote "'OK' – no gynecomastia [illegible]." *Id*.

For the visit on January 12, 2016, Gulley told Dr. Kelly that he was experiencing restlessness, though the progress notes for that visit says "none" in the area for side effects (no weight is recorded). *Id*. at 5, 18. On April 27, 2016, Dr. Kelly gave him a document on IDOC letterhead titled "psychotropic medication information" that listed side effects for numerous psychiatric medications, but did not list gynecomastia as a potential side effect of Risperdal. *Id*. at 5, 20-21. On that date, Dr. Kelly documented side effects of dizziness, shaking of the head with no involuntary movement of the face, mouth, or body, "no gynecomastia," Gulley's desire to stay on his medication despite the tremors, and a weight of 236 pounds. *Id*. at 19.

On March 8, 2017, Gulley saw nurse practitioner Nathan, complained about stiff muscles, and "asked about other side effects" (it is unclear if this means that Gulley asked Nurse Nathan about additional side effects he was experiencing or asked about possible side effects generally). *Id*. at 6. According to Gulley, Nurse Nathan gave him another copy of the IDOC medication information document and advised him that additional possible side effects from his medications were gynecomastia, galactorrhea, pituitary tumors, breast cancer, osteoporosis, metabolic syndrome, hypertension, diabetes mellitus, diabetic ketoacidosis, hyperglycemia, and insulin insufficiency. *Id*. "This prompted not only [Gulley] but also NP Nathan to discontinue Risperdal and Depakote." *Id*. Nurse Nathan's progress notes reflect the discontinuation of Risperdal and Depakote, as well as Gulley's complaint about stiff muscles. *Id*. at 22-23. According to Gulley, Risperdal's potential side effects are gynecomastia, sedation, restlessness, dry mouth, muscle stiffness, tremors,

3

abdominal muscular movements, sexual dysfunction, elevated lipids, elevated blood sugar, and heart irregularities. *Id*. at 5. Gulley describes Depakote's side effects as tremor, upset stomach, easy bruising, hair loss, weight gain, and sedation, and Remeron's side effects as sedation, weight gain, and increased appetite. *Id*.

Between April 22, 2015, and March 8, 2017, Gulley alleges that he "experienced and/or complained of weight gain, increased appetite, sleep deprivation, sore breast tissue, larger breast tissue, tremors, and muscle stiffness as is documented in the exhibits attached [to the complaint]." *Id*. at 6. He asserts that: (1) Dr. Kelly never advised him of the side effects of Risperdal and Depakote; (2) Wexford failed to adopt a policy of advising him about the side effects of Risperdal and Depakote and knew that the lack of information about side effects could cause him to develop gynecomastia; (3) Dr. Kelly, Wexford, psychiatric administrator Mirsky, and physician's assistant Williams "knew of the substantial risk that Risperdal could cause gynecomastia and rapid longterm weight gain that could make it difficult to detect gynecomastia"; and (4) IDOC Acting Director Baldwin, ARB member Sarah Johnson, Warden Randy Pfister, and grievance officer Mansfield "were in direct knowledge of the Risperdal side effects" based on the IDOC medication information document "and were still deliberately indifferent in failing to rectify the situation." *Id*. at 7. In a grievance dated April 28, 2017, attached to the complaint, Gulley says that the right side of his chest is "lopsided," states that this causes embarrassment when he showers, and represents that he is experiencing ongoing "serious chest pain" that he now attributes to past treatment with Risperdal. *Id*. at 9-10. Gulley maintains that he would not have taken the medication prescribed by Dr. Kelly if he had known it could cause these symptoms. Given Gulley's focus on gynecomastia, the gist of his complaint appears to be the purported failure to warn that Risperdal—the only medication with this as a possible side effect—could lead to this condition.

Gulley asserts that the medical records attached to the complaint document that he "experienced and/or complained of weight gain, increased appetite, sleep deprivation, sore breast tissue, larger breast tissue, tremors, and muscle stiffness." R. 1 at 6. But the medical records attached to his complaint do *not*, in fact, show that any medical professional ever diagnosed him with gynecomastia or observed symptoms consistent with gynecomastia. Indeed, the only specific observations about gynecomastia in the medical records Gulley submitted are notes that affirmatively represent that he was *not* displaying symptoms of this condition. Relatedly, the basis for Gulley's claim of ongoing weight gain that allegedly obscured the start of his purported right breast growth in 2015 is unclear, given his documented weight of 248 pounds on April 22, 2015, 250 pounds on June 17, 2015, 245 pounds on September 23, 2015, and 236 pounds on April 27, 2016. Gulley's complaint attaches a grievance dated April 28, 2017, reflecting his assertion that he

4

was experiencing ongoing "serious chest pain" and had a "lopsided" area on the right side of his chest that he attributed to Risperdal. R. 1 at 9-10.

Generally speaking, a prisoner has no constitutional right to be provided with "an exhaustive list of all the possible adverse effects of each aspect of his treatment. Instead, a doctor simply must provide a prisoner with such information as a reasonable patient would find necessary." *Phillips v. Wexford Health Sources, Inc.*, 522 F. App'x 364, 367 (7th Cir. 2013) (non-precedential disposition) (quoting *Pabon v. Wright*, 459 F.3d 241, 250 (2d Cir. 2006)). "Otherwise, 'after receiving appropriate treatment that proved to have unpleasant side effects, a prisoner might claim that he had not received sufficient information to allow him to decide whether to refuse that treatment.'" *Id.* (quoting *Pabon*, 459 F.3d at 250). Having said that, a prisoner can state a valid Eighth Amendment claim based on a failure-to-warn theory if a "doctor fails to disclose information that is reasonably necessary to make an informed decision to accept or reject proposed treatment" when "the failure to disclose creates a *substantial* risk of serious damage to the prisoner's health." *Id.* (emphasis in original); *see also Manzanales v. Krishna*, 113 F. Supp. 3d 972, 979 (N.D. Ill. 2015) (denying motion to dismiss a claim brought by a prisoner who alleged that medical staff failed to disclose "a substantial (and not a minor) risk" when discussing the pros and cons of a second surgical procedure).

Gulley's belief that he developed gynecomastia due to Risperdal therapy does not appear to be supported by the medical records he attached to his complaint. Nevertheless, for the purposes of screening review, the Court accepts—as it must at this stage in the proceedings—Gulley's assertion that he has experienced significant chest pain due to what he alleges is an enlarged right breast. It is clear that Gulley's position is that the risk that Risperdal would cause gynecomastia with serious side effects, such as his alleged severe chest pain, is "substantial enough to require disclosure to a reasonable prisoner-patient." *Cox v. Brubaker*, 558 F. App'x 677, 679 (7th Cir. 2014) (non-precedential disposition). Although this is a close call, Gulley may proceed with a failure-to-warn claim against Dr. Kelly, who prescribed Risperdal therapy. Nothing in this order, which is based on preliminary review of the complaint without an adversarial presentation, precludes any legal argument that Dr. Kelly may advance in response to Gulley's allegations.

Summons shall issue for service of the complaint on Dr. Kelly by the Service. The Clerk is directed to forward a copy of the completed USM-285 service form for Dr. Kelly to the Marshals Service. The Marshals Service is appointed to serve Dr. Kelly, and is authorized to send a request for waiver of service under Federal Rule of Civil Procedure 4(d) before attempting personal service. Gulley is instructed to file all future papers concerning this action with the clerk of this court in care of the Prisoner Correspondent. Any letters or other documents sent directly to a judge or that otherwise fail to comply with these instructions may be disregarded by the

Court or returned to Gulley. Gulley is reminded that he must promptly submit a change-of-address notification if he is moved to another facility. Failure to keep the Clerk advised of his correct address may lead to dismissal of this action for want of prosecution.

On the remaining claims, however, the Defendants are dismissed, right now without prejudice. First, Gulley asserts that Wexford failed to adopt a policy requiring its doctors to advise prisoner-patients they might develop gynecomastia as a side effect of Risperdal therapy because the medication information sheet he received does not list gynecomastia as a potential side effect for Risperdal. A corporate entity like Wexford violates a prisoner's constitutional rights when it has a policy that is responsible for infringing those rights. *See Shields v. Ill. Dep't. of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). Given that the medication-information sheet (that Gulley himself has provided) is on IDOC letterhead, the complaint does not plausibly support a policy claim against Wexford.

Second, Gulley claims that psychiatric administrator Mirsky and physician's assistant Williams "knew of the substantial risk that Risperdal could cause gynecomastia and rapid longterm weight gain that could make it difficult to detect gynecomastia." There are no substantive allegations in the complaint about these Defendants, and a complaint's reference to a defendant by name is insufficient to state a claim. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) (holding that "[a] plaintiff cannot state a claim against a defendant by including the defendant's name in the caption"). Mirsky or Williams are dismissed from the case.

Third, Gulley alleges that IDOC Acting Director Baldwin, Administrative Review Board member Sarah Johnson, Warden Randy Pfister, and grievance officer Mansfield "were in direct knowledge of the Risperdal side effects" based on the IDOC medication information sheet "and were still deliberately indifferent in failing to rectify the situation." *Id.* at 7. But this is pure conclusion, rather than a factual assertion, and the complaint bears no allegation on how it is that those reviewing officials, who had no role in prescribing Risperdal to Gulley, knew of the side effects (or the seriousness of the risk, for that matter). This allegation is insufficient to state a claim against those Defendants.

Finally, the Illinois Department of Corrections and Stateville Correctional Center are not proper parties because they are not suable entities (in other words, they are not the type of entities that can be held liable in a § 1983 action). Those entities are simply arms of the State. In sum, Gulley may not proceed against Wexford Health Sources, Mirsky, Williams, Baldwin, Johnson, Pfister, Mansfield, the Illinois Department of Corrections, or Stateville Correctional Center.

*Motion for Attorney Representation*

"There is no right to court-appointed counsel in federal civil litigation," *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014), but the Court has discretion to request that an attorney represent an indigent litigant on a volunteer basis under 28 U.S.C. § 1915(e)(1). Recruitment is not warranted right now. First, Gulley says that he has written to an attorney and a law firm who rejected his request for representation. He should continue to seek pro bono (free of charge) or contingency-based legal assistance by writing at least two more attorneys, law firms, or organizations. If he renews his motion at a later date, then he must identify the attorneys or organizations he contacted and summarize the responses he received.

In any event, this Order provides guidance to Gulley on what the legal standards apply. What's more, this case is in its earliest phases as at the next step in this case is for the Marshals Service to effectuate service. The motion for attorney representation is denied without prejudice.

To track the service of process only (no appearance is required), a status hearing is set for February 16, 2018, at 8:30 a.m.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: December 27, 2018