UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LOUIS E. GULLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17 CV 08209 |
| | ) | |
| DR. JONATHAN KELLY, | ) | Honorable Judge Edmond E. Chang |
| | ) | |
| Defendants | ) | Honorable Judge Daniel G. Martin |
| | ) | **Defendant – Jury Demand** |
| | ) | |

**DEFENDANT DR. JONATHAN KELLY'S
ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

NOW COME Defendant, DR. JONATHAN KELLY, by and through his attorneys, BOLLINGER CONNOLLY KRAUSE, LLC, and for his Answer and Affirmative Defenses to Plaintiff's First Amended Complaint (Dkt. #58), states as follows:

1. This a lawsuit brought pursuant to 42 U.S.C. § 1983 to redress violations of Gulley's rights under the Eighth Amendment to the United States Constitution to be free of cruel and unusual punishment while he is incarcerated at IDOC facilities.

**ANSWER:** Defendant denies liability. Defendant admits that plaintiff purports to bring a claim pursuant to 42 U.S.C. § 1983 and the Eighth Amendment.

2. Defendant Dr. Jonathan Kelly's (as an employee of Wexford Health Sources, Inc.) consistent and longstanding failure to advise Gulley of the side effects of the prescription drug Risperdal shows a deliberate indifference to Gulley's serious health issue and is a violation of Gulley's constitutional rights.

**ANSWER:** Defendant denies failing to advise Gulley of the side effects of Risperdal.

1

Defendant denies deliberate indifference and denies violating Gulley's constitutional rights. Defendant denies the remaining allegations of this paragraph.

3. Gulley seeks compensatory and punitive damages resulting from Defendant's violations of his constitutional rights.

**ANSWER:** Defendant denies violating Gulley's constitutional rights. Defendant denies that Gulley is entitled to compensatory or punitive damages.

### Jurisdiction and Venue

4. The Court has jurisdiction over this cause pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4). Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) because the Defendant resides in the District and a substantial part of the events and omissions giving rise to Gulley's claim occurred in the District.

**ANSWER:** Defendant denies liability. Defendant admits jurisdiction and venue.

### Parties

5. Gulley, is a fifty (50) year old male, who is currently incarcerated in the IDOC, being housed at Stateville, located at 16830 South Route 53, Cresthill, IL 60403. He has been incarcerated there since around or about October 2014.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

6. Wexford Health Sources, Inc. ("Wexford"), is a Florida based corporation with a principle place of business at 425 Holiday Drive, Foster Plaza Two, Pittsburgh, PA 15220. Wexford has a contractual obligation with the IDOC to provide medical and mental health services to inmates housed within the IDOC facilities, which includes Stateville.

**ANSWER:** Defendant denies that Wexford Health Sources, Inc. is a defendant. Defendant

lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

7. The Defendant, Dr. Jonathan Kelly ("Dr. Kelly"), was employed by Wexford as a psychiatrist at Stateville during all times relevant to this First Amended Complaint. He is being sued in his individual capacity.

**ANSWER:** Defendant admits that at certain times he was employed by Wexford as a psychiatrist. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

## Facts

8. Risperidone is an antipsychotic medication that has been used to treat schizophrenia since the 1990s and to treat bipolar disorder since the early 2000s.

**ANSWER:** Defendant admits that Risperidone is an antipsychotic medication that is used to treat schizophrenia and bipolar disorder. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

9. Risperidone is marketed and sold under the name of Risperdal.

**ANSWER:** Defendant admits.

10. Risperdal has many known adverse side effects including, but not limited to, rapid and long-lasting weight gain, gynecomastia, galactorrhea, pituitary tumors, breast cancer, osteoporosis, metabolic syndrome, hypertension, diabetes mellitus, diabetic ketoacidosis, hyperglycemia, and insulin insufficiency.

**ANSWER:** Defendant admits that a side-effect of Risperdal is weight gain. Defendant denies that a side-effect of Risperdal is rapid and long-lasting weight gain. Defendant admits that gynecomastia is a rare and uncommon side-effect of Risperdal. Defendant admits that

3

galactorrhea is a rare and uncommon side-effect of Risperdal. Defendant denies that pituitary tumors and breast cancer is a side effect of Risperdal. Defendant denies that hypertension is a side-effect of Risperdal. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph. Defendant denies the remaining allegations of this paragraph.

11. Gynecomastia is a condition that results in excessive development of male mammary glands and breast tissue, sometimes even to a functional state.

**ANSWER:** Defendant admits that gynecomastia is a condition that can result in excessive development of male mammary glands. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

12. Gynecomastia may require mastectomy or other surgery to treat. It may also be treated with other medication or recede on its own.

**ANSWER:** Defendant denies that Gulley has gynecomastia. Defendant admits that gynecomastia may require mastectomy or other surgery to treat. Defendant admits that gynecomastia can be treated with medication or recede on its own.

13. Risperdal has been linked to gynecomastia since at least 2005, and the risk of gynecomastia has been included on the medical label since at least 2006.

**ANSWER:** Defendant admits that gynecomastia has been linked to Risperdal since at least 2005. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

14. Hyperprolactinaemia (elevated prolactin) is a common side effect of long-term exposure to risperidone (Risperdal) (occurring in 40-50% of subjects), which can cause gynecomastia in men, according to a paper published in May 2012 in the Journal of

4

Psychopharmacology entitle "Prolactin, hyperprolactinaemia and antipsychotic treatment: a review and lessons for treatment of early psychosis." (Cookson, Hodgson, and Wildgust: May 2012, vol. 26 no. 5, suppl. 42-51). Use of risperidone (Risperdal) has been linked to gynecomastia since at least 2005, if not before. (*Id.*) In fact, gynecomastia is one of the main reasons why patients stop using risperidone (Risperdal). (*Id.*)

**ANSWER:** Defendant admits that use of risperidone (Risperdal) has been linked to gynecomastia since at least 2005, if not before. Defendant denies that gynecomastia is one of the main reasons why patients stop using risperdone (Risperdal). Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

15. Gynecomastia may recede on its own, otherwise treatment for gynecomastia includes medications used to treat breast cancer, such as tamoxifen (Soltamox) and raloxifene (Evista), as well as liposuction and/or mastectomy surgery.

**ANSWER:** Defendant denies that Gulley has gynecomastia. Defendant admits that gynecomastia may recede on its own. Defendant admits that treatment for gynecomastia can include medications used to treat breast cancer, such as tamoxifen (Soltamox) and raloxifene (Evista), as well as liposuction and/or mastectomy surgery.

16. Dr. Kelly knew or should have known of the substantial risk that Gulley would develop gynecomastia because it is one of the primary side effects of Risperdal.

**ANSWER:** Defendant denies that gynecomastia is a primary side effect of Risperdal. Defendant denies the remaining allegations of this paragraph.

17. Dr. Kelly however disregarded the substantial risk of this serious side effect, and failed to advise Gulley that gynecomastia was a primary side effect of Risperdal.

5

**ANSWER:** Defendant denies that gynecomastia is serious side effect or substantial risk with use of Risperdal. Defendant denies that he failed to advise Gulley that gynecomastia is a potential side effect of Risperdal. Defendant denies that gynecomastia is a primary side effect of Risperdal.

18. Gulley developed gynecomastia by taking Risperdal. Gulley would not have agreed to take Risperdal if he had ever been advised of this serious side effect.

**ANSWER:** Defendant denies that Gulley developed gynecomastia by taking Risperdal. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

19. Gulley saw Dr. Kelly on April 22, 2015, at Stateville and upon Gulley's information and belief he was diagnosed with Bipolar Disorder and depression by Dr. Kelly who then prescribed the following medications: Risperdal, Depakote, and Remeron. At no time during or after this visit did Dr. Kelly advise Gulley of any side effects or the risk of serious harm that could occur from taking these medications. See Exhibit A.

**ANSWER:** Defendant admits that Gulley saw Dr. Kelly on April 22, 2015 at Stateville and admits that Gully was diagnosed with Bipolar Disorder and depression by Dr. Kelly. Defendant admits that he prescribed medications of Risperdal, Depakote, and Remeron on April 22, 2015. Defendant denies that any serious harm occurred from these medications. Defendant denies that Gulley has gynecomastia. Defendant denies the remaining allegations of this paragraph.

20. Gulley on June 17, 2015, saw Dr. Kelly for a follow-up visit during which time Gulley complained of being restless and on his belief that he had begun to gain weight due to an increase in his appetite that he attributed to the medications he was taking. Dr. Kelly only notes for side effects "dry mouth, diarrhea" in his mental health progress note. See Exhibit B.

**ANSWER:** Defendant admits that on June 17, 2015 that he saw Gulley for a follow-up visit. Defendant denies that Gulley complained of being restless on June 17, 2015. Defendant admits that his mental health progress note charted on June 17, 2015 that Gulley complained of side-effects of "dry mouth, diarrhea." Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

21. Gulley on September 23, 2015, had another follow-up appointment with Dr. Kelly and complained of being restless and experiencing tremors. Dr. Kelly's notes in the side effect column read: "Ok. No gynecomastia, cps." Dr. Kelly at this point has not informed Gulley of any side effects or the risk of contracting gynecomastia, even though he wrote in the mental health note that Gulley does not have gynecomastia. See Exhibit C

**ANSWER:** Defendant admits that Gulley had a follow-up appointment on September 23, 2015. Defendant denies that Gulley complained of being restless and experiencing tremors. Defendant denies that his notes in the side-effect column read "Ok". Defendant admits that his notes in the side-effect column does read "No gynecomastia." Defendant denies that his notes in the side-effect column read "cps". Defendant denies that Gulley has gynecomastia. Defendant denies that he had not informed Gulley of any side effects or the risk of contracting gynecomastia. Defendant denies the remaining allegations of this paragraph.

22. On April 27, 2016, being under the psychiatric care of Dr. Kelly since on or about April 22, 2015, Gulley saw Dr. Kelly and again complained of experiencing tremors, dry mouth, and muscle stiffness. Dr. Kelly at this appointment, after over a year on Depakote, Risperdal, and Remeron, Dr. Kelly noted "(Told I/M about potential for gynecomastia on Risperdal, potential for T.O. invol. Movements)". For the first time, Gulley received a copy of the IDOC Psychotropic Medication Information Sheet. See Exhibit D

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph that for the first time, Gulley received a copy of the IDOC Psychotropic Medication Information Sheet. Defendant denies that on April 27, 2016 that Gulley was under psychiatric care of Dr. Kelly since on or about April 22, 2015. Defendant admits that on April 27, 2016 that Gulley complained of shaking/tremors. Defendant denies that on April 27, 2016 that Gulley complained of dry mouth or muscle stiffness. Defendant admits that on April 27, 2016 that he noted "Told I/M about potential for gynecomastia on Risperdal, potential for invol. movements. Defendant denies that Dr. Kelly noted T.O. Defendant denies the remaining allegations of this paragraph.

    23.    The IDOC Psychotropic Medication Information Sheet mentions Risperdal under the "Neuroleptics (typical and atypical)" class of psychotropic medications. The Psychotropic Medication Information Sheet does not list the side effect of gynecomastia anywhere. The "Neuroleptics" heading states in its entirety:

"Atypical neuroleptics (Zyprexa/Olanzapine, Clorazil/Clozapine, Geodon/Ziprasidone, Risperdal/Risperdone) SIDE EFFECTS MAY INCLUDE: sedation, restlessness, dry mouth, muscle stiffness, tremor, abnormal muscular movements, sexual dysfunction, irregular menstrual periods, elevated lipids, elevated blood sugar, heart irregularities. Your provider will screen regularly for abnormal muscle movements. REQUIRES REGULAR BLOOD TESTING."

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

    24.    Gulley still had not been informed about the serious risk of getting gynecomastia and breast cancer. Gulley decided he wanted to discontinue taking any of the prescribed medications.

**ANSWER:** Defendant denies that he did not inform Gulley of potential risk of getting gynecomastia. Defendant denies that Gulley has gynecomastia. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

25. Dr. Kelly informed Gulley that he could not just stop taking the medication "cold turkey" and that he would have to tapper it off slowly. Gulley was informed he would suffer a chemical imbalance that would cause him to have seizures. As a result, Gulley continued to be prescribed Risperdal. Dr. Kelly still did not inform Gulley of the seriousness of gynecomastia despite Dr. Kelly knowing of the serious risk to Gulley.

**ANSWER:** Defendant denies the allegations of this paragraph.

26. Gulley feared he could start having seizures and so reluctantly agreed to take the medication in tapered-off doses until it was safe for him to completely stop. Dr. Kelly never verbally or otherwise informed Gulley of the serious risk to his health. Dr. Kelly never informed Gulley how long he would have to take the tapered-off dosages before he could completely stop taking the medication.

**ANSWER:** Defendant denies any serious risk to Gulley's health. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

27. It is upon information and belief that Gulley did not see Dr. Kelly again after June 15, 2016, because Dr. Kelly retired.

**ANSWER:** Defendant admits that he never saw Gulley after June 15, 2016. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

9

28.     Gulley on March 8, 2017, saw Nurse Practitioner L. Nathan and complained of muscle stiffness. The Nurse Practitioner Nathan then informed Gulley of the serious risk of gynecomastia, breast cancer, hypertension, osteoporosis and other serious harmful side effects for the first time. Nurse Nathan discontinued the prescription for Depakote, Risperdal, and Remeron. See Exhibit E.

**ANSWER:**     Defendant admits that on March 8, 2017 that Gulley saw Nurse Practitioner L. Nathan and complained of muscle stiffness. Defendant denies that nurse Nathan discontinued the prescription for Depakote, Remeron and Risperdal. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

29.     Gulley saw a nurse on June 8, 2018, due to chest pain. The nurse noted that Gulley complained of "Right side of chest, throbbing pain". See Exhibit F

**ANSWER:**     Defendant admits the allegations of this paragraph.

30.     On June 29, 2018, Gulley saw Dr. Okezie who diagnosed him with gynecomastia and referred him to a psychiatrist to evaluate whether continue Risperdal therapy was appropriate. See Exhibit G

**ANSWER:**  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

31.     Dr. Kelly repeatedly disregarded the substantial risks of these serious side effects and failed to advise Gulley that Risperdal could cause gynecomastia for a substantial period of time while at Stateville.

**ANSWER:**     Defendant denies the allegations of this paragraph.

32.     It is upon information and belief that Wexford, Dr. Kelly's employer, has separate

10

medical consent forms for Remeron and Risperdol.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

## COUNT I
Violation of Gulley's Eighth Amendment Rights
For Compensatory and Punitive Damages Against Dr. Kelly

33. Gulley re-alleges and incorporates paragraph 1-32 herein.

**ANSWER:** Defendant incorporates his answers to paragraphs 1-32 as and for his answer to paragraph 33.

34. Dr. Kelly, who prescribed Gulley Risperdal to treat his schizophrenia and bi-polar disorder, knew or should have known that use of Risperdal carried a substantial risk that Gulley would suffer gynecomastia as a side effect.

**ANSWER:** Defendant denies the allegations of this paragraph.

35. Dr. Kelly deliberately disregarded this significant risk and failed to advise Gulley that gynecomastia was a primary side effect of Risperdal for a substantial period of time.

**ANSWER:** Defendant denies the allegations of this paragraph.

36. Gulley did develop gynecomastia after taking Risperdal. Gulley would not have taken this drug if he had known it would cause him to develop male breasts and pain in his chest.

**ANSWER:** Defendant denies that Gulley has gynecomastia. Defendant denies that Gulley developed gynecomastia after taking Risperdal. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

37. Gulley's gynecomastia is a serious, body altering condition which lingers to this day. One of his breasts remain swollen and he continues to have physical pain and soreness in his chest as a result of the gynecomastia.

11

**ANSWER:** Defendant denies that Gulley developed gynecomastia. Defendant denies that gynecomastia is a serious medical condition. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

38. Dr. Kelly's failure to advise Gulley of the substantial risk that he could develop gynecomastia as a result of his Risperdal use and his failure to advise Gulley of such side effects manifests a reckless and callous disregard towards Gulley's well-being and constitutional rights.

**ANSWER:** Defendant denies that Gulley has gynecomastia. Defendant denies that there was a substantial risk that Gulley could develop gynecomastia. Defendant denies the remaining allegations of this paragraph.

39. As a proximate result, Dr. Kelly caused Gulley serious physical harm, including lasting physical change to his body by the development of male breasts, as well as persistent pain in his chest from the swollen tissue and glands.

**ANSWER:** Defendant denies that he caused Gulley serious physical harm. Defendant denies the remaining allegations of this paragraph.

### Request for Relief

WHEREFORE, for all the reasons set forth herein, Plaintiff Louis E. Gulley respectfully requests that the Court:

1. Award Gulley compensatory and punitive damages against Defendant Dr. Jonathan Kelly for his violations of Gulley's constitutional rights;

2. Award Gulley his costs and unreasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and,

3. Award any such further relief as this Court may deem just.

**ANSWER:** Defendant denies that Gulley is entitled to any relief and denies that Gulley is

entitled to his Prayer for Relief numbers 1-3.

WHEREFORE, Defendant, DR. JONATHAN KELLY, respectfully requests this Honorable Court to enter an Order granting judgment in favor of Defendant and against Plaintiff, dismissing his Amended Complaint with prejudice, and costs for Defendants pursuant to 28 U.S.C. §1988, and for such other relief as this Court deems appropriate and just.

## JURY DEMAND

**Defendant demands trial by jury.**

## AFFIRMATIVE DEFENSES

Without prejudice to the denials of the allegations contained in Plaintiff's Amended Complaint, Defendant, DR. JONATHAN KELLY, without waiving the obligations of Plaintiff to prove every factual element of his claims, states as and for his Affirmative Defenses as follows:

**1.      Qualified Immunity**

At all times relevant to Plaintiff's claims, the Defendant charged herein, Dr. Kelly, acted in the good faith performance of his official duties without violating Plaintiff's clearly established constitutional rights.  Defendant is protected from liability by the doctrine of qualified immunity.

**2.      Official Capacity Claim Barred**

To the extent that Plaintiff's claims are against Defendant in his official capacity the claims are barred by the Eleventh Amendment.

**3.      Failure to Exhaust Administrative Remedies**

Plaintiff has failed to exhaust his administrative remedies prior to the initiation of this cause of action and as a result Plaintiff's claims are barred by the Prison Litigation Reform Act.

Plaintiff failed to contact his counselor prior to filing his grievance.

Plaintiff failed to timely submit his grievance after he knew or should of known of a

13

medical grievance regarding treatment of his mental health and prescription of Risperdal.

Plaintiff failed to timely and properly appeal his grievance to the Administrative Review Board.

Plaintiff has failed to properly exhaust his administrative remedies under the Prison Litigation Reform Act and Illinois Statutes and Codes.

Plaintiff's Amended Complaint must be dismissed for failure to properly exhaust his administrative remedies.

4. **Statute of Limitations**

To the extent that Plaintiff's claims are barred by the statute of limitations, they should be dismissed. Plaintiff's claims are not a continuous course of treatment and have accrued in excess of two years of Plaintiff filing his original complaint.

5. *Heck v. Humphrey*

To the extent Plaintiff's allegations require the invalidation of any discipline that resulted in the loss of good time credit, these allegations are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

6. **Mootness**

To the extent that Plaintiff is suing the Defendant for declaratory relief or injunctive relief not intended to address ongoing violations, his claim is moot.

Plaintiff has no ongoing alleged violation of medical treatment and Dr. Kelly no longer has the ability to render treatment to Plaintiff Gulley as Dr. Kelly has retired.

Accordingly, Plaintiff is no longer entitled to injunctive or declaratory relief.

7. **Compensatory Damages Barred**

To the extent that Plaintiff is suing the Defendant for compensatory damages for mental or

14

emotional injury suffered without a prior showing of physical injury, his claim is barred by the Prison Litigation Reform Act.

### 8. Failure to State Claim with Specificity

Defendant's personal involvement has not been established with sufficient specificity to state a claim upon which relief may be granted.

### 9. Res Judicata

To extent Plaintiff has previously litigated the same issues in a prior action that are now involved in this lawsuit, Plaintiff's suit is barred by the doctrine of res judicata.

WHEREFORE, Defendant, DR. JONATHAN KELLY, respectfully requests this Honorable Court to enter an Order granting judgment in favor of Defendant and against Plaintiff, dismissing his Amended Complaint with prejudice (Dkt.#58), and costs for Defendants pursuant to 28 U.S.C. §1988, and for such other relief as this Court deems appropriate and just.

Respectfully Submitted,

By: /s/ Robert S. Tengesdal
*One of the Attorneys for Defendant*

Robert Tengesdal #6288650
BOLLINGER CONNOLLY KRAUSE LLC
500 West Madison Street – Suite 2430
Chicago, Illinois 60661
Phone: (312) 253-6200
Email(s): rtengesdal@bollingertrials.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 10, 2019, I caused the foregoing document to be filed electronically with the Clerk of the Court through ECF and to be served upon all counsel of record by filing the same with the CM/ECF system.

By: /s/ Robert S. Tengesdal