**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LOUIS E. GULLEY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-08209 |
| | ) | |
| vs. | ) | Judge: Hon. Edmond E. Chang |
| | ) | |
| DR. JONATHAN KELLY, | ) | Magistrate Judge: Hon. Daniel G. Martin |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Louis E. Gulley ("Mr. Gulley"), by his attorneys, submits this Memorandum in response to Defendant Dr. Jonathan Kelly's ("Dr. Kelly" or "Defendant") Motion for Summary Judgment ("Motion").

**INTRODUCTION**

This Section 1983 action arises because Dr. Kelly acted with deliberate indifference and violated Mr. Gulley's Eighth Amendment right to be free from cruel and unusual punishment by prescribing the drug Risperdal to Mr. Gulley but failing to advise him of the substantial risk that he would suffer serious, painful, body-morphing side effects from taking the drug. Mr. Gulley has testified that during the time Dr. Kelly was treating him at Stateville Correctional Center, Mr. Gulley was never informed that Risperdal was known to cause gynecomastia, which is marked by swollen, painful male breast tissue and glands, and that, had he known of the drug's side effects, he would never have agreed to take Risperdal. After Mr. Gulley took the drug pursuant to prescriptions first issued by Dr. Kelly and continued by other medical personnel, Mr. Gulley developed painful, lopsided breasts, and was diagnosed with gynecomastia.

1

Defendant has moved for summary judgment based on his claims that (1) he warned Mr. Gulley of possible side effects of Risperdal, (2) Mr. Gulley consented to the use of Risperdal, (3) Dr. Kelly never had knowledge of a serious medical condition in Mr. Gulley, and (4) Mr. Gulley continued taking Risperdal under another doctor's care for ten months after Mr. Gulley last saw Dr. Kelly. Defendant contends that he is entitled to summary judgment under the ruling in another case brought against Dr. Kelly for failure to warn an inmate that gynecomastia was a possible side effect of Risperdal, *Williams v. Kelly*, No. 15-C-8135, 2018 WL 1911820 (N.D. Ill. Apr. 23, 2018).[1]

However, Mr. Gulley disputes that Dr. Kelly ever informed him about any of Risperdal's side effects, so his consent was uninformed and ineffective. Dr. Kelly observed that Mr. Gulley in fact exhibited several of those other side effects and so should have recognized the strong likelihood that Mr. Gulley would also develop gynecomastia from taking Risperdal. Dr. Kelly does not deny that Mr. Gulley in fact developed gynecomastia after two years on the Risperdal regimen initiated by Dr. Kelly, but denies any liability because he had stopped treating Mr. Gulley before specific gynecomastia symptoms had been detected. Having put in place and maintained a treatment plan that carried a serious risk of side effects that others then continued; and having failed to equip Mr. Gulley with the necessary information to make an informed decision to consent to treatment, and to monitor and recognize likely side effects, Dr. Kelly bears some responsibility when those side effects in fact appear. The decision in *Williams v. Kelly* does not compel a different result. Dr. Kelly's Motion should be denied.[2]

---

[1] A third case alleging a failure by Dr. Kelly to advise an inmate that gynecomastia was a possible side effect of Risperdal, *Foster v. Kononov*, No. 16-cv-10017 (N.D. Ill.), was apparently settled earlier this year.

[2] Gulley incorporates his Rule 56.1(b)(3)(c) Statement of Additional Facts ("Gulley St. of Add'l. Facts") into this Memorandum as if fully set forth herein.

## STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file show that there exists no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine dispute of material fact is created when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views the evidence, construes all facts, and draws all reasonable inferences in a light most favorable to the non-movant. *Sherrod v. Lingle,* 223 F.3d 605, 610 (7th Cir. 2000) (denying summary judgment for defendants on prisoner's Eighth Amendment claim because disputed issues of material fact existed). In assessing the parties' proposed facts, the court is not to weigh the evidence or determine witness credibility because those are functions of the fact finder. *See Anderson*, 477 U.S. at 254. Indeed, even uncorroborated testimony, if based on personal knowledge or firsthand experience, can be evidence of disputed material facts. *See Payne v. Pauley,* 337 F.3d 767, 773 (7th Cir. 2003). The non-movant "'need not match [the movant] witness for witness' . . . nor must [the non-movant] 'persuade the court that [his] case is convincing, [he] need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact.'" *Id.* at 771 (denying summary judgment for defendant on arrestee's Eighth Amendment claim because disputed issues of material fact existed). The granting of summary judgment should be applied with caution to ensure that litigants are allowed a trial on bona fide factual issues. *Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 8, AFL-CIO v. J. L. Clark Co.*, 471 F.2d 694, 697 (7th Cir. 1972).

## ARGUMENT

Defendant is not entitled to summary judgment because genuine issues of material fact exist and because he is not entitled to judgment as a matter of law. A genuine factual issue exists as to whether Dr. Kelly informed Mr. Gulley that gynecomastia and other side effects are associated with

Risperdal. And substantial evidence exists that Dr. Kelly knew or should have drawn the inference that the prescription of Risperdal created a substantial risk of serious harm to Mr. Gulley but took no steps to mitigate that risk. Defendant argues that Dr. Kelly was not deliberately indifferent to Mr. Gulley's medical needs, but the facts plainly demonstrate that Dr. Kelly knew that Risperdal presented a significant risk of gynecomastia to Mr. Gulley in particular. Further, a genuine issue of fact exists as to whether Dr. Kelly informed Mr. Gulley of this risk, whether the risk was substantial, whether the injuries Mr. Gulley were sufficiently serious, and whether the failure to advise Mr. Gulley caused those injuries.

A prison official violates the Eight Amendment prohibition against cruel and unusual punishment when he displays deliberate indifference to an inmate's serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017); *Whiting v. Wexford Health Sources Inc.*, 839 F. 3d 658, 662 (7th Cir. 2016). Liability for deliberate indifference can result if an official is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The question of whether an official was deliberately indifferent is a question of fact. *Orlowski v. Milwaukee Cty.,* 872 F.3d 417, 423 (7th Cir. 2017).

To survive summary judgment, an inmate must present evidence suggesting that his injury amounted to an objectively serious medical condition and that prison officials were aware of the condition and knowingly disregarded it. *Conley v. Birch*, 796 F.3d 742, 747 (7th Cir. 2015). A prisoner need not establish that officials intended or desired the harm that transpired. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). It is enough to show that defendants knew of a substantial risk of harm to the inmate and disregarded the risk. *Id*. at 523. And since self-reporting is often the only indicator a doctor has of a patient's condition, there is no requirement that a prisoner provide

4

objective evidence of his pain and suffering. *Id*. Defendant here has failed to show the absence of a genuine dispute of material fact on any element of Mr. Gulley's Eighth Amendment deliberate indifference claim.

A prisoner states "a valid Eighth Amendment claim based on a failure-to-warn theory if a 'doctor fails to disclose information that is reasonably necessary to make an informed decision to accept or reject proposed treatment' when 'the failure to disclose creates a substantial risk of serious damage to the prisoner's health." *Gulley v. Kelly*, No. 17-cv-08209, ECF No. 8 at 5 (quoting *Manzanales v. Krishna*, 113 F. Supp. 3d 972, 979 (N.D. Ill. 2015) and *Phillips v. Wexford Health Sources, Inc.*, 522 F. App'x 364, 367 (7th Cir. 2013) (non-precedential disposition) (emphasis in original)). Courts have recognized that deliberate indifference claims based on a failure to warn encompass a prisoner's "constitutional right to information . . . as is reasonably necessary to make a rational decision to accept or reject proposed medical treatment." *Salcedo-Vazquez v. Nwaobasi*, No. 13-CV-606-NJR-DGW, 2015 WL 7177231, at *7 (S.D. Ill. Nov. 16, 2015) (quoting *Benson v. Terhune*, 304 F.3d 874, 884–85 (9th Cir. 2002). Although the Seventh Circuit has not yet had occasion to articulate the precise standard for a failure-to-warn claim, a doctor treating a prisoner must, at a minimum, "provide a prisoner with such information as a reasonable patient would find necessary," including a warning regarding any risks 'substantial enough that a reasonable patient would expect to be apprised of them.'" *Phillips*, 522 F. App'x at 367. To prevail on the claim, a plaintiff must additionally establish that "defendant[] knew [the risks] to be significant." *Id*. Thus, although not every failure to warn implicates the Eighth Amendment, when the doctor's failure to warn creates a substantial risk of serious damage to a prisoner's health, that rises to the level of deliberate indifference. *See id.*

> A. **There is a Genuine Dispute of Material Fact Regarding Whether Dr. Kelly Ever Informed Mr. Gulley of the Risk of Developing Gynecomastia From Taking Risperdal.**

Defendant contends that Dr. Kelly told Mr. Gulley of the potential side effects of taking Risperdal on the date of the initial prescription on April 22, 2015 and on multiple occasions

5

thereafter, that Mr. Gulley signed three "Consent to Treatment" forms agreeing to his treatment with Risperdal, and that Mr. Gulley never complained of any gynecomastia-related side effects to Dr. Kelly.

Dr. Kelly's testimony, however, is wholly rebutted by the testimony of Louis Gulley. Mr. Gulley testified directly and repeatedly that Dr. Kelly did not inform him of any of the possible side effects of Risperdal from April 22, 2015 until April 27, 2016. (Def. Ex. 2, Gulley Dep. 52:20-55:2.)[3] On April 27, 2016, Dr. Kelly provided Mr. Gulley with the IDOC Psychotropic Medication Information Sheet that listed eleven potential side effects of Risperdal, but did not list gynecomastia. (*See* Gulley Ex. 2, IDOC Psychotropic Med. Info.) In fact, Mr. Gulley testified that he never learned from Dr. Kelly that gynecomastia was a possible side effect of Risperdal (Def. Ex. 2, Gulley Dep. 14:21-15:10; 68:2-14), not learning that fact until March 8, 2017 when Nurse Nathan orally informed him. (Gulley St. of Add'l. Facts ¶ 15.) Mr. Gulley testified that he would have remembered if he had been warned of the risk of developing gynecomastia because, as an inmate in a male maximum-security prison, the presence of enlarged breasts could endanger an inmate. (Def. Ex. 2, Gulley Dep. 84:14-20; 95:12-22.) Mr. Gulley's testimony that he would not have taken Risperdal had he known about gynecomastia is unrebutted. (Gulley St. of Add'l. Facts ¶ 27.) Mr. Gulley's testimony is based on his personal knowledge or firsthand experience, and standing alone is sufficient to create a disputed material fact. *See Payne*, 337 F.3d at 773 (court made clear that uncorroborated evidence may be sufficient to thwart a summary judgment motion); *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999) (court reiterated that at summary judgment stage, the court must accept all of the non-movant's evidence as true.)

---

[3] Defendant's Exhibits to the Motion are available at ECF No. 125.

Defendant suggests that Mr. Gulley's signature on Consent to Treatment forms consenting generally to Dr. Kelly's treatment plan somehow supports a finding that Mr. Gulley was aware that taking Risperdal could cause gynecomastia. While the forms at issue do list the three prescribed drugs, nowhere do they mention gynecomastia or any other potential side effect associated with the drugs. (*See* Gulley Ex. 1, Plaintiff's IDOC Medical Records at 01481-82, 01497-98, 01533-4.) Given that Mr. Gulley testified that he was never informed by Dr. Kelly about the risk of developing gynecomastia from Risperdal, his signature on the form acknowledging his treatment with the drug is of no legal significance. Plainly, Mr. Gulley could not have given informed consent to undertake a risk he did not know about regardless of whether he signed a form agreeing with an unspecified treatment plan.

Equally unhelpful to Dr. Kelly are the IDOC Medical Records that purport to reflect the results of the examinations of Mr. Gulley by Dr. Kelly and other medical personnel. The records indicate that Mr. Gulley saw Dr. Kelly on seven occasions: February 24, 2015, April 22, 2015, June 17, 2015, September 23, 2015, January 12, 2016, April 27, 2016, and June 15, 2016. Dr. Kelly prepared these records without any independent review for accuracy by Mr. Gulley so the contents represent only Dr. Kelly's position. Nonetheless, the records do not reflect any communication from Dr. Kelly to Mr. Gulley regarding side effects of Risperdal until the April 27, 2016 visit at which Dr. Kelly provided Mr. Gulley with the IDOC Psychotropic Medication Information Sheet. Defendant points to entries in certain records purporting to list side effects of Risperdal experienced by Mr. Gulley, but Mr. Gulley testified that he did not know what the possible side effects of Risperdal might be so he was never in a position to ascribe any physical changes to his taking of that particular medication. Similarly, Dr. Kelly's entries in records from three visits of "no gynecomastia" are not probative, given Mr. Gulley's testimony that he did not

7

know what gynecomastia was and had never been told by Dr. Kelly it was a possible side effect of Risperdal, and also given that Dr. Kelly testified that he never performed a physical examination on Mr. Gulley. (Def. Ex. 4, Kelly Dep. 46:5-47:11.)

Mr. Gulley's testimony rebuts that of Dr. Kelly and thereby creates a genuine issue of material fact that precludes summary judgment. The Medical Records in no event are sufficient to contradict Mr. Gulley's testimony that he was never informed that he could develop gynecomastia from taking Risperdal, that he trusted his physicians to tell him of any dangers associated with the medications they prescribed, and that had he been informed that gynecomastia was a side effect of Risperdal, he would not have agreed to take it. (Def. Ex. 2, Gulley Dep. 72:13-74:9).

**B.     There is a Genuine Dispute of Material Fact Regarding Whether Dr. Kelly Recognized That Mr. Gulley Faced a Substantial Risk of Serious Harm From the Side Effects of Risperdal.**

Particularly in light of the gravity of the risk of contracting gynecomastia and the potentially serious impact on Mr. Gulley's health, the evidence clearly shows a genuine issue of fact regarding whether Dr. Kelly's conduct constitutes deliberate indifference to the substantial risk that Mr. Gulley could develop gynecomastia from taking Risperdal. As previously explained, an inmate may establish an Eighth Amendment deliberate indifference claim by demonstrating that a medical professional failed to disclose information that is "reasonably necessary to make an informed decision to accept or reject proposed treatment," if the failure to disclose creates a substantial risk of serious damage to the prisoner's health. *See Manzanales*, 113 F. Supp. 3d at 979, citing *Phillips* 522 Fed. Appx. at 366-67; *see also Cox v. Brubaker,* 558 Fed. Appx., 677, 678-79 (7th Cir. 2014). Here at a minimum, a genuine factual dispute exists regarding whether a reasonable patient in Mr. Gulley's circumstances would expect to be apprised of the substantial risks associated with taking Risperdal. *See Salcedo-Vazquez*, 2015 WL 7177231, at *7 (citing *Phillips*, 522 Fed. Appx. at 367).

Mr. Gulley testified that during his treatment by Dr. Kelly he did not even know that gynecomastia could be a side effect of taking Risperdal and therefore he could not be expected to bring the issue to Dr. Kelly's attention before that time. (Gulley St. of Add'l. Facts ¶¶ 23-24.)

Dr. Kelly, however, was fully aware that gynecomastia was a side effect of Risperdal at the time he treated Mr. Gulley, and that use of Risperdal carried a substantial risk to Mr. Gulley of suffering gynecomastia as a side effect. (Gulley St. of Add'l. Facts ¶¶ 20, 22.) Dr. Kelly tries to downplay the risk of gynecomastia by characterizing it as a "not common" and "not a primary" side effect of Risperdal (Def. Ex. 4, Kelly Dep at 21:20-22; 51:21-52:5) but concedes that medical literature identifies gynecomastia as a "side effect of concern" (*Id.* 75:17-76:3). Moreover, on the occasions where Dr. Kelly noted the absence of side effects in Mr. Gulley, the only absent side effect he noted was gynecomastia, and not any of the eleven side effects noted in the IDOC Psychotropic Medication Information Sheet. (*See* Gulley Ex. 2, IDOC Psychotropic Med. Info.) Dr. Kelly's apparent concern about Mr. Gulley developing gynecomastia undercuts his contention that the 2 mg dose he prescribed posed no risk of developing the condition. Given that Dr. Kelly's conduct reflects a recognition that Mr. Gulley faced a substantial risk of developing the serious side effect of gynecomastia, there exists a genuine issue of material fact regarding whether that conduct constituted deliberate indifference.

Defendant's failure to disclose that developing gynecomastia is a risk of taking Risperdal meant that Mr. Gulley was unable to make a rational decision balancing the benefits of the treatment against the risk of developing painful, enlarged breasts while confined in a maximum-security, all-male prison. After Defendant first prescribed Risperdal to Mr. Gulley, Gulley did not question Dr. Kelly about possible side effects of the medications because he trusted Dr. Kelly. (Def. Ex. 2, Gulley Dep. 49:11-18.) And the treatment plan that Mr. Gulley signed that day

9

contained no information about the possible side effects of Risperdal. (Def. Ex. 4, Kelly Dep. 40: 16-41:3; Gulley Ex. 1 at 01479.) As Mr. Gulley testified, he would not have agreed to take Risperdal if he had known of the possible side effects when it was first prescribed to him. (Def. Ex. 2, Gulley Dep. 72:13-74:9). But because of Defendant's failure to disclose, he never had an informed choice at the outset.

Defendant's failure to warn meant that Mr. Gulley was likewise unable to make an informed decision whether to continue the Risperdal treatment. Following the Defendant's initial prescription of Risperdal, Defendant continued to treat Mr. Gulley with Risperdal and thus had multiple subsequent opportunities to warn Mr. Gulley of the risk of gynecomastia. (Def. Statement of Facts ¶ 6.) In each of those visits, Defendant again failed to disclose the risk of gynecomastia, (*see* Def. Ex. 2, Gulley Dep. 14:21-15:10; 68:2-14). Dr. Kelly never conducted a physical examination of Mr. Gulley, never observed Mr. Gulley when his shirt was removed, and never examined Mr. Gulley's breasts to determine whether they were enlarged. (Def. Ex. 4, Kelly Dep. 46:5-47:11). Yet he made notations in Mr. Gulley's chart stating "no gynecomastia." (Gulley Ex. 1 at 1495, 01531, 01533), so he plainly recognized the substantial risk faced by Mr. Gulley. But without the necessary disclosure of risks, Mr. Gulley was unable to monitor, recognize, or report his own side effects, until it was too late and he had developed advanced bilateral gynecomastia, with painful, leaking nipples. (Gulley St. of Add'l. Facts ¶¶ 20, 40-41).

Thus, Defendant was well aware that gynecomastia is a risk of Risperdal treatment. Defendant's notations in Mr. Gulley's chart likewise confirm that Defendant was aware that gynecomastia was a risk substantial enough to require warnings and monitoring. That Defendant nonetheless failed to disclose this risk (or actually monitor Mr. Gulley's symptoms) evidences deliberate indifference to Mr. Gulley's serious medical needs. *See Phillips*, 522 F. App'x at 367.

    C.    **Defendant's Reliance on *Williams v. Kelly* is Misplaced.**

Defendant incorrectly contends that the outcome in the present case is controlled by the case of *Williams v. Kelly*, No. 15-C-8135, 2018 WL 1911820 (N.D. Ill. Apr. 23, 2018), a case in

which another prisoner sued Dr. Kelly after developing gynecomastia from Risperdal. (Motion at 8.) That case is distinguishable. In *Williams*, Defendant won summary judgment on a claim by a prisoner who alleged that, starting in the late-1990's, prison doctors began prescribing him Risperdal. *See Williams v. Kelly*, 777 F. App'x 162, 163 (7th Cir. 2019). Defendant Kelly was the last in a series of at least eleven mental health providers who prescribed Williams the drug. *See Williams*, 2018 WL 1911820 at *1. In that case, the court found that Williams failed to present evidence creating a triable issue of fact that Kelly knew that *continuing* the Risperdal treatment prescribed by the prior medical providers presented a substantial risk of serious harm. *Id.* at *4-5.

In contrast, Defendant prescribed Mr. Gulley Risperdal for the first time in his life on April 15, 2015. Dr. Kelly continued this prescription over the next 14 months during which he was directly treating Mr. Kelly. On June 15, 2016, before Dr. Kelly had retired, he again renewed Mr. Gully's Risperdal prescription for at least three more months at which time a new mental health provider would take over treatment of Mr. Gulley. Thereafter, on November 12, 2016, another mental health provider, Dr. Kartan, extended the Risperdal regimen that Dr. Kelly had initiated for Mr. Gulley. Not until April 25, 2017 did that regimen end and Mr. Gulley's treatment with Risperdal cease. Thus, contrary to Defendant's argument, Dr. Kelly's "care plan and treatment" were not similar to that in *Williams v. Kelly*.

Although Defendant cited the correct deliberate indifference standard in *Williams*, ("to survive Defendant's summary judgment motion, [the plaintiff] must present sufficient evidence raising a triable issue of fact that Dr. Kelly actually knew about a substantial risk of serious harm to [the plaintiff's] health or safety and nonetheless disregarded it"), Defendant attempts to stretch *Williams* beyond its facts. (*See* Motion at 8.) Defendant seems to suggest that *Williams* stands for the proposition that when prison medical providers make decisions about whether to warn about a medication's side effects, there can be no Eighth Amendment violation. (*See* Motion at 8-9.) That is incorrect. Although the Eighth Amendment does not reach mere disputes regarding exercise of medical judgment, a failure to properly *exercise* medical judgment constitutes deliberate

11

indifference to a medical need. *Rasho*, 856 F.3d at 476 (7th Cir. 2017) (rejecting defendants doctors' argument characterizing their decision as "an exercise of medical judgment.")

For example, when a medical provider selects "an easier and less efficacious treatment without exercising professional judgment," that "can constitute deliberate indifference." *Id.* As this court and other courts applying the guidance in *Phillips* have recognized, the Eight Amendment encompasses failure-to-warn claims. *See Kudelka v. Dodge Corr. Inst.*, No. 19-C-11, 2019 WL 1099069 at *2 (E.D. Wis. Mar. 8, 2019) ("[r]egarding a medical provider's failure to warn about potential side effects of a medication, 'allegations of a substantial risk of developing a side effect are sufficient to state a claim of deliberate indifference when a doctor fails to warn of those side effects.'"); *Manzanales*, 113 F. Supp. 3d at 979 (N.D. Ill. 2015) ("one type of deliberate indifference claim is where a doctor fails to disclose information that is 'reasonably necessary to make an informed decision to accept or reject proposed treatment'"); *Salcedo-Vazquez v. Nwaobasi*, 13-CV-606-NJR-DGW, 2015 WL 7177231, at *7 (S.D. Ill. Nov. 16, 2015) (recognizing that "the failure to provide inmates with information regarding a particular medical treatment or procedure can constitute deliberate indifference if the risks associated with the treatment or procedure are 'substantial enough that a reasonable patient would expect to be apprised of them.'")

Other cases relied upon by Dr. Kelly do not support entry of judgment here. Dr. Kelly's citations to Illinois medical malpractice case law are inapposite. (*See* Motion at 9, 10.) Defendant cites to *Happel v. Wal-Mart Stores, Inc.*, 316 Ill. App. 3d 621, 627 (2000), quoting the Illinois learned intermediary doctrine, which imposes a duty on the physician "to inform a patient of the risks and side effects associated with a medication." *Id.* As the appellate court explained in *Happel*, this doctrine shields drug manufacturers from "a duty directly to warn the customer about possible side effects of the medication." *Id.* (concluding that under certain circumstances, a pharmacist can remove himself from the protection of the learned intermediate doctrine). The doctrine does not establish the deliberate indifference standard for medical professionals regarding a failure to warn regarding side effects. *See id.*

Defendant cites an out-of-circuit, fact-bound Ninth Circuit case that rejected a deliberate indifference claim based on a failure to warn about the side effects of pain medication. *See Burgess v. Mar*, 395 F. Appx 368, 368 (9th Cir. 2010) (non-precedential) (affirming motion to dismiss where plaintiff failed to allege defendant had reason to know of a substantial risk of negative reaction to the medication); *see also Burgess v. Mar*, No. 2:08-CV-01251-RLH-GWF, 2009 WL 10691167, at *4 (D. Nev. Aug. 24, 2009). Defendant also cites *Pabon v. Wright*, 459 F. 3d 241, 250 (2nd Cir. 2006), but this case is likewise inapposite because in the Second Circuit, a prisoner's right to medical information is governed by the Due Process Clause of the Fourteenth Amendment, and thus requires balancing of a prisoner's rights against relevant countervailing state interests. *Id.* at 250-253. Furthermore, in that case, the court held that the prisoner's right to be informed of the risks and side effects of liver biopsies and Interferon treatment were not violated because his right to medical information was not clearly established at the time of his treatment. *Id.* at 254. Therefore, the court concluded there was no need to "search the record to determine whether [the prisoner] submitted evidence from which a reasonable fact-finder could have inferred that Defendants acted with deliberate indifference." *Id.*

Thus neither *Williams v. Kelly* nor any other case law cited by Defendant supports grant of summary judgment here.

### D. There is a Genuine Dispute of Material Fact Regarding Whether There Was A Serious Risk of Substantial Harm to Plaintiff's Health.

It is uncontested that Dr. Kelly placed Mr. Gulley on Risperdal for the first time in his life, a course of treatment that continued for two years thereafter. The uncontroverted facts permit a fact-finder to reasonably infer that Dr. Kelly's actions and the gynecomastia are linked. Defendant does not contest that after his retirement other medical professionals at Stateville continued treating Mr. Gulley with Risperdal as Dr. Kelly first prescribed to him. Defendant also does not contest that Mr. Gulley in fact did develop gynecomastia, with medical professionals noting Mr. Gulley complaining of gynecomastia-related symptoms no later than April 8, 2017 and Dr. Okezie

13

diagnosing the condition on June 29, 2018. Defendant also does not contest that while Dr. Kelly was treating Mr. Gulley, Mr. Gulley did complain to Dr. Kelly of restlessness, dry mouth, muscle stiffness, tremors, and other well-known side effects of Risperdal. Thus, regardless whether Mr. Gulley had been warned about any side effects when he was first prescribed Risperdal, he did exhibit Risperdal-related side effects which should have put Dr. Kelly on notice that Mr. Gulley was prone to Risperdal's side effects, which Dr. Kelly knew include gynecomastia. Because Defendant never warned Mr. Gulley of the risk of gynecomastia, he was unable to self-monitor for side effects and his emerging gynecomastia apparently went undetected for some time. Thus, while Defendant claims Dr. Kelly cannot be liable because he retired before Mr. Gulley was diagnosed with gynecomastia, Defendant should not be able to avoid liability simply because one of the risks of his treatment plan was not fully diagnosed until after he had retired.

Nor can Defendants demonstrate that gynecomastia did not constitute serious harm to Mr. Gulley. Gynecomastia is a serious, body morphing condition, characterized by increased breast tissue and painful breast swelling in men. (Gulley St. of Add'l. Facts ¶¶ 37, 38, 41.) Not surprisingly, in a prison environment, Mr. Gulley's swollen breasts caused him to be the subject of ridicule and put him in danger and fear of assault. (Gulley St. of Add'l. Facts ¶¶ 44, 45.) In addition to swelling of his breasts as a result of gynecomastia, Mr. Gulley experienced physical soreness and tenderness in his chest as well as nipple leakage. (Gulley St. of Add'l. Facts ¶¶ 37, 38, 41.)

There is no requirement that Mr. Gulley provide objective evidence of his pain and suffering, as self-reporting is often the only indicator a doctor has of a patient's condition. *See Hayes*, 546 F.3d at 523. Consequently, Mr. Gulley's testimony regarding his pain and suffering is sufficient to demonstrate its seriousness. Mr. Gulley testified to his chest pain. (Gulley St. of Add'l.

14

Facts ¶¶ 35, 36, 38.) He testified to the ridicule he experienced from other inmates as a result of his swollen breasts. (Gulley St. of Add'l. Facts ¶ 45.) These self-reports are direct evidence of Mr. Gulley's pain and suffering as a result of gynecomastia, which resulted after ingesting Risperdal, and this evidence is sufficient to demonstrate that Mr. Gulley's injury was serious.

Issues of causation present inherently factual questions, and generally cannot be disposed of on summary judgment. *See Conley*, 796 F. 3d at 749 (where the court determined that causation is normally a matter for the jury). Here, as previously demonstrated, there is a genuine dispute of material fact regarding whether Mr. Gulley was informed that gynecomastia was a side effect of taking Risperdal, and Mr. Gulley's testimony that he would not have taken Risperdal if he was so advised is undisputed.

## CONCLUSION

For the reasons stated above, Louis Gulley respectfully requests that this Court deny Defendant's Motion for Summary Judgment.

Dated: November 2, 2021                                   Respectfully submitted,

                                                               By: */s/ Richard P. Steinken*
                                                                    One of the Attorneys for Plaintiff

William D. Heinz
wheinz@jenner.com
Richard P. Steinken
rsteinken@jenner.com
Theo A. Lesczynski
tlesczynski@jenner.com
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654-3456
Tel: 312-222-9350

15

## **CERTIFICATE OF SERVICE**

I, Theo A. Lesczynski, an attorney, certify that I caused a copy of the foregoing Plaintiff's Memorandum Of Law In Opposition To Defendant's Motion For Summary Judgment to be served upon all counsel of record via the ECF Pacer system on November 2, 2021.

/s/ Theo A. Lesczynski