UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LOUIS E. GULLEY, ) | |
| ) | |
| Plaintiff, ) | Case No. 17-cv-08209 |
| ) | |
| vs. ) | Judge: Hon. Edmond E. Chang |
| ) | |
| DR. JONATHAN KELLY, ) | Magistrate Judge: Hon. Daniel G. Martin |
| ) | |
| Defendants ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S RULE 56.1
STATEMENT OF UNDISPUTED FACTS**

Plaintiff Louis E. Gulley, by and through his attorneys, Jenner & Block LLP, and pursuant to Local Rule 56.1(b), respectfully submits his Response to Defendant's Rule 56.1 Statement of Undisputed Facts. Gulley will cite to his Local Rule 56.1 (b)(3) Statement of Additional Facts as "Gulley St. of Add'l. Facts."

## Exhibits

Exhibit 1 – Plaintiff's IDOC Records

Exhibit 2 – Psychotropic Medication Information Sheet

## Parties

1.  Plaintiff, LOUIS GULLEY ("Plaintiff"), was at all relevant times, an inmate at Stateville Correctional Center ("Stateville") (Dkt. 58, ¶ 5).

    **RESPONSE:** Admitted.

2.  Defendant, DR JONATHAN KELLY, is a psychiatrist licensed to practice medicine in the state of Illinois who was employed as a psychiatrist at Stateville between 2011 and 2016 when he retired (Dkt. 58, pg. 7; Ex. 4, pg. 15 1.5-9, 66 1. 4-15).

    **RESPONSE:** Admitted.

1

### Venue and Jurisdiction

3. Jurisdiction and venue are proper because Plaintiff filed a one count complaint under 42 U.S.C. § 1983 for alleged injuries and damages that occurred within the Northern District of Illinois, while Plaintiff was an inmate at Stateville (Dkt. 58,114). There is no state law count or claim.

   **RESPONSE:** Admitted.

### Undisputed Material Facts

4. Plaintiff came to Stateville for his current conviction through NRC on December 12, 2013 (Ex. 2, pg. 29-30).

   **RESPONSE:** Admitted.

5. Dr. Kelly worked as a psychiatrist for Wexford Health Sources, Inc. ("Wexford") at Stateville between 2011 and 2016 (Ex. 4, pg. 15 1. 5-9). He retired shortly after the June 15, 2016 visit with Plaintiff (Ex. 4, pg. 66 1. 4-15).

   **RESPONSE:** Admitted, but state that Dr. Kelly testified that he left Wexford on medical leave shortly after the June 15, 2016 visit. (Def. Ex. 4, Kelly Dep 16:16-19).

6. Plaintiff saw Dr. Kelly on seven (7) occasions: February 24, 2015, April 22, 2015, June 17, 2015, September 23, 2015, January 12, 2016, April 27, 2016, and June 15, 2016 (Ex. 6, #4; Ex. 3. Pgs. 1471, 1479, 1483, 1495, 1521, 1531, 1541).

   **RESPONSE:** Admitted.

7. On February 24, 2015, Dr. Kelly saw Plaintiff for the first time in an initial psychiatric evaluation. Plaintiff was evaluated for auditory and visual hallucinations (Ex. 3, pg. 1471; Ex. 4, pgs. 32 1. 6-15).

   **RESPONSE:** Admitted.

8. Previously, he had been diagnosed with depression and prescribed Remeron and Depakote. (Ex. 4, pg.36 1. 14-18).

   **RESPONSE:** Admitted.

9. On April 22, 2015, Dr. Kelly saw Plaintiff for a medication review based upon a diagnosis of bipolar disorder, unspecified; psychotic disorder, unspecified. The dosage of Depakote was increased to 1500 mg, Risperdal 2 mg was started and Remeron at 15 mg was continued (Ex. 4, pgs. 34 1. 24-pg. 35 1. 18; Ex. 3, pg. 1479).

   **RESPONSE:** Admitted.

10.     Plaintiff signed a consent to treatment form on April 22, 2015 agreeing to the treatment plan that added Risperdal to the medications he was already prescribed, Depakote and Remeron (Ex. 3, pg. 1482).

    **RESPONSE:** Objection, FRE 802. Dr. Kelly's testimony and the exhibits on which it is based are hearsay and no foundation has been laid for admission. Without waiving these objections, Mr. Gulley admits he signed a form entitled "Mental Health Treatment Plan," but denies that the form contains any reference to disclosure of side effects and denies that the form makes reference to disclosure of a risk of gynecomastia from taking Risperdal.

11.     Depakote is an anticonvulsant used in psychiatry as a mood stabilizing medication. It was prescribed to Plaintiff to treat his bipolar mood disorder (Ex. 4 pg. 35 1. 19-pg. 36 1. 4). Remeron is an antidepressant medication (Ex. 4 pg. 36 li.11-13) that, like Depakote, Plaintiff was already prescribed prior to first seeing Dr. Kelly (Ex. 4 pg. 36 1. 14¬19). Risperdal is an antipsychotic medication that was added because Plaintiff admitted to experiencing psychotic symptoms and wanted medication for the symptoms he was experiencing (Ex. 4, pg. 41 1.4-19).

    **RESPONSE:** Objection FRE 402, 702. Dr. Kelly has not been proffered or qualified as an expert in pharmacology and his testimony on the subject is incompetent, irrelevant and inadmissible. Without waiving these objections, Mr. Gulley admits that Depakote and Remeron had been prescribed to Gulley prior to seeing Dr. Kelly and admit that Dr. Kelly testified that he prescribed Risperdal to Gulley to treat psychotic symptoms he testified Mr. Gulley claimed to be experiencing.

12.     Dr. Kelly explained the possible side effects of Risperdal, including gynecomastia, to Plaintiff per the doctor's usual practice that he applied to all patients (Ex. 4 pgs.28 1.17-pg. 29 1.21) and obtained informed consent verbally and in writing from Plaintiff (Ex. 3 pg. 1482; Ex. 4, pgs. 41 1.24-pg. 42 1.4, pg. 42 1.9-22).

    **RESPONSE:** Admit that Dr. Kelly so testified, but deny that Mr. Gulley was so informed. Dr. Kelly's notes do not reflect that he informed Mr. Gulley of the possible side effects of Risperdal or the potential risk to contract gynecomastia from taking Risperdal when he first prescribed the

drug to Mr. Gulley, and Mr. Gulley denies that Dr. Kelly so informed him. (Gulley St. of Add'l. Facts ¶¶ 8-12.)

13. On June 17, 2015, Dr. Kelly saw Plaintiff again. Dr. Kelly performed a mental health exam that included a discussion of Plaintiff's continuing symptoms and his compliance with taking the medications daily (Ex. 4 pg.43 1.6-11; pg. 43 1. 24- pg. 44 1. 22).

    **RESPONSE**: Admitted.

14. On June 17, 2015, Plaintiff reported as a side effect only "dry mouth" (Ex. 4 pg. 44 1. 23- pg. 45 1. 2). Plaintiff denied any other side effects including tardive dyskinesia (involuntary movements) (Ex. 4, pgs. 45 1. 8-24; Ex. 3, pg. 1487).

    **RESPONSE**: Objection, FRE 802. Dr. Kelly's testimony and the exhibits on which it is based are hearsay and no foundation has been laid for admission. Without waiving his objections, Mr. Gulley admits that he informed Dr. Kelly that he had dry mouth but also that he was restless and had begun to gain weight. Mr. Gulley denies that Dr. Kelly at this time had informed him of any potential side effects of Risperdal and otherwise denies the assertions in this paragraph.

15. Dr. Kelly, as a psychiatrist, does not perform a physical examination but it is his custom and practice to ask whether his patient, including Plaintiff Gulley was experiencing any side effects, including gynecomastia (Ex. 4 pg. 47 1. 2-11).

    **RESPONSE**: Admit that Dr. Kelly so testified and admit that Dr. Kelly does not perform physical examinations. Mr. Gulley denies that Dr. Kelly at this time had informed him of any potential side effects of Risperdal, including gynecomastia, and his notes reflect no such warning. (Gulley St. of Add'l. Facts ¶¶ 7-14)

16. Through the course of his care under Dr. Kelly, Plaintiff never complained of gynecomastia or any related symptoms, including enlarged breast, pain in the chest or nipple leaking (Id).

    **RESPONSE**: Admit that Mr. Gulley did not complain of enlarged breasts, chest pain, or nipple leakage to Dr. Kelly, but state that Mr. Gulley did complain to Dr. Kelly of restlessness, dry mouth, muscle stiffness, tremors, and other well-known side effects of Risperdal, despite having not been warned about any side effects when he was first prescribed Risperdal, thereby putting Dr.

4

Kelly on notice that Mr. Gulley was prone to Risperdal's side effects, which include gynecomastia. (Gulley St. of Add'l. Facts ¶ 17).

17. Dr. Kelly had access to Plaintiff's medical records as far as physical examinations Plaintiff was given by medical staff (Ex. 4, pgs. 46 1. 17-pg.47 1. 1).

    **RESPONSE:** Admitted.

18. A therapeutic dose of Risperdal is between 2 mg and 8 mg (Ex. 4 pg. 48 1. 15- pg. 49 1. 2).

    **RESPONSE:** Objection FRE 402, 702. Dr. Kelly has not been proffered or qualified as an expert in medical practice or pharmacology and his testimony on the subject is incompetent, irrelevant and inadmissible. Without waiving these objections, Mr. Gulley admits that Dr. Kelly so testified.

19. Plaintiff was never prescribed more than a 2 mg dose, which is a low dose (Ex. 4 pg. 82 1.13- pg. 83 1. 2).

    **RESPONSE:** Objection FRE 402, 702. Dr. Kelly has not been proffered or qualified as an expert in medical practice or pharmacology and his testimony on the subject is incompetent, irrelevant and inadmissible. Without waiving these objections, Mr. Gulley admits that he was never prescribed more than a 2 mg dose.

20. The Medical literature is clear in stating that you need a high dose of Risperdal to get the rare side effect of gynecomastia (Ex. 4, pgs. 48 1. 15- pg. 49 1. 2; pg. 82 1. 7-12). A high dose of Risperdal would be 6-8 mg. per day (Ex. 4 pg. 82 1. 13-20)

    **RESPONSE:** Objection FRE 402, 702. Dr. Kelly has not been proffered or qualified as an expert in medical practice or pharmacology and his testimony on the subject is incompetent, irrelevant and inadmissible. Without waiving these objections, Mr. Gulley admits that Dr. Kelly so testified, but denies that he was so informed. Dr. Kelly's notes do not reflect that he informed Mr. Gulley of the potential to contract gynecomastia from taking Risperdal when he first

5

prescribed the drug to Mr. Gulley, and Mr. Gulley denies that Dr. Kelly ever so informed him. (Gulley St. of Add'l. Facts ¶¶ 11-14.)

21. Dr. Kelly next saw Plaintiff on September 23, 2015 for another mental health examination (Ex. 4 pg. 49 1. 9-12). Plaintiff admitted to continuing to experience psychotic symptoms of auditory and visual hallucinations of the devil talking to him and watching him, which Dr. Kelly noted as psychotic and bipolar disorder symptoms (Ex. 4. Pg. 49 1. 13- pg. 50 1. 2).

   **RESPONSE:** Objection, FRE 802. Dr. Kelly's testimony and the exhibits on which it is based are hearsay and no foundation has been laid for admission. Without waiving these objections, admit that Dr. Kelly so testified.

22. When asked about side effects on September 23, 2015, Dr. Kelly charted Plaintiff's response of "don't know". Dr. Kelly charted "no gynecomastia" based upon Plaintiff's statement that his breast size had not increased (Ex. 4, pgs. 50 1. 9-21; Ex. 3, pg. 1495).

   **RESPONSE:** Objection, FRE 802. Dr. Kelly's testimony and the exhibits on which they are based are hearsay and no foundation has been laid for admission. Without waiving these objections, admit that Dr. Kelly so testified, but note that the Mental Health Progress Notes for that visit do not include reference to a statement by Mr. Gulley that his breast size had not increased. Further, at this time Dr. Kelly had not informed Mr. Gulley of any potential side effects of Risperdal, including gynecomastia, and his notes reflect no such warning (Gulley St. of Add'l. Facts ¶¶ 14-17)

23. It was Dr. Kelly's custom and practice to chart either the quote of the patient's response to Dr. Kelly's inquiry regarding side effects or to write down whatever positive side effects were described. Dr. Kelly did not always document each and every negative, or non-present, side effect (Ex. 4, pg. 51 1. 11-20).

   **RESPONSE:** Admit that Dr. Kelly so testified, but deny that Mr. Gulley had been informed of any potential side effects of Risperdal and so would have been unable to identify any particular symptom as a side effect of any drug. (Gulley St. of Add'l. Facts ¶ 10)

24. Plaintiff signed a consent to treatment form on September 23, 2015 agreeing to the same treatment plan in place since April 22, 2015, including the prescription for Risperdal 2 mg

(Ex. 3, pg. 1498), getting his informed consent to taking these medications (Ex. 4, pgs. 54 l. 12-17, pg.55 l. 1-14).

**RESPONSE:** Objection, FRE 802. Dr. Kelly's testimony and the exhibits on which it is based are hearsay and no foundation has been laid for admission. Without waiving these objections, Mr. Gulley admits he signed a form entitled "Mental Health Treatment Plan," but denies that the form reflects his informed consent because it contains no reference to disclosure of side effects and makes no reference to disclosure of a risk of gynecomastia from taking Risperdal.

25. Dr. Kelly saw Plaintiff on January 12, 2016 for another mental health examination. Plaintiff continued to describe psychotic symptoms including auditory and visual hallucinations, paranoia, and mood swings (Ex. 4 pg. 55 l. 22- pg. 56 l. 1).

**RESPONSE:** Objection, FRE 802. Dr. Kelly's testimony and the exhibits on which it is based are hearsay and no foundation has been laid for admission. Without waiving these objections, Mr. Gulley admits that Dr. Kelly so testified.

26. Dr. Kelly offered to increase the dose of Risperdal because of these continued symptoms. Plaintiff declined the increased dose and said he wanted to maintain the same dose (Ex. 4 pg. 56 l. 11-20; pg. 59 l. 1-14). Side effects were discussed, and Plaintiff said he had none (Ex. 4, pgs. 57 l. 5-7, Ex. 3, pg. 1521).

**RESPONSE:** Objection, FRE 802. Dr. Kelly's testimony and the exhibits on which it is based are hearsay and no foundation has been laid for admission. Without waiving these objections, Mr. Gulley admits that Dr. Kelly so testified but deny that Mr. Gulley had been informed of any potential side effects of Risperdal and so would have been unable to identify any particular symptom as a side effect of any drug. (Gulley St. of Add'l. Facts ¶ 10)

27. Dr. Kelly saw Plaintiff for a mental health examination on April 27, 2016 (Ex. 4 pg. 59 l. 21- pg. 60 l. 4). Plaintiff continued to report psychotic symptoms of auditory and visual hallucinations, paranoia, and angry mood swings. Plaintiff reported feeling side effects of dizziness and shaking of his right hand, but denied any face, mouth, or body involuntary movements and denied any gynecomastia (Ex. 4, pgs.60 l.10- pg. 61 l. 2, Ex. 3, pgs. 1531-1534).

7

**RESPONSE:** Objection, FRE 802. Dr. Kelly's testimony and the exhibits on which it is based are hearsay and no foundation has been laid for admission. Without waiving these objections, Mr. Gulley admits that Dr. Kelly so testified but deny that Gulley had been informed that a potential side effect of Risperdal was gynecomastia. (Gulley St. of Add'l. Facts ¶¶ 10-14)

28. As part of the examination on April 27, 2016, Plaintiff was again asked whether he was experiencing any side effects of Risperdal, including gynecomastia (Ex.4 pg.67 1.11-18; Ex. 3, pg. 1533). Plaintiff denied any side effects of Risperdal, including gynecomastia symptoms (Ex. 4 pg. 67 1. 7-18).

    **RESPONSE:** Objection, FRE 802. Dr. Kelly's testimony and the exhibits on which it is based are hearsay and no foundation has been laid for admission. Without waiving these objections, Mr. Gulley admits that Dr. Kelly so testified but note that the side effects identified by Mr. Gulley at that examination might have been caused by Risperdal and deny that at that point he had been informed that gynecomastia was a potential side effects of Risperdal. (Gulley St. of Add'l. Facts ¶¶ 10-14)

29. Plaintiff again signed a consent to treatment form on April 27, 2016 agreeing to treatment including Risperdal, thereby providing informed consent (Ex. 4, pg. 65 1.12-15; Ex. 3, pg. 1534).

    **RESPONSE:** Admit that Mr. Gulley signed a consent to treatment form on April 27, 2016 agreeing to treatment that included Risperdal but denies that his acquiescence to the treatment constituted informed consent because he had not been warned of side effects, including the potential to contract gynecomastia from taking Risperdal.

30. Dr. Kelly saw Plaintiff for his final visit and mental health examination on June 15, 2016 because Dr. Kelly retired a short time after that visit (Ex. 4, pg. 66 1. 4-15). On that date, Plaintiff continued to describe experiencing psychotic symptoms including auditory and visual hallucinations of the devil, paranoia, and mood swings (Ex. 4, pg. 66 1. 21- pg. 67 1. 10, Ex. 3, pg. 1541).

      **RESPONSE**: Objection, FRE 802. Dr. Kelly's testimony and the exhibits on which it is based are hearsay and no foundation has been laid for admission. Without waiving these objections, Mr. Gulley admits that Dr. Kelly so testified.

31. On June 15, 2016, Plaintiff responded to Dr. Kelly's inquiry regarding side effects by saying he had none, and Dr. Kelly charted no gynecomastia symptoms (Ex. 4, pgs. 66 1. 7-10).

      **RESPONSE**: Objection, FRE 802. Dr. Kelly's testimony and the exhibits on which it is based are hearsay and no foundation has been laid for admission. Without waiving these objections, Mr. Gulley admits that Dr. Kelly so testified but deny that at that point Mr. Gulley had been informed that gynecomastia was a potential side effect of Risperdal. (Gulley St. of Add'l. Facts ¶¶ 10-15)

32. As with the prior visits and examinations, Plaintiff said he thought the medications helped and he wanted to continue with the medications (Ex. 3, pg. 1541; Ex. 4, pg. 69 1. 14-22).

      **RESPONSE**: Denied.

33. Dr. Kelly had a conversation on each visit with Plaintiff regarding potential side effects of his medications, including gynecomastia, per his usual custom and practice (Ex. 4, pgs. 72 1. 24-pg. 73 1. 13, pg. 85 1. 10-20).

      **RESPONSE**: Denied.

34. Dr. Kelly used his medical judgment, based upon his education, training, and experience as a medical doctor specializing in psychiatry to decide what information and warnings to provide to his patient, Plaintiff Gulley (Ex. 4, pg. 81 1. 9-18).

      **RESPONSE**: Objection FRE 402, 702. Dr. Kelly has not been qualified or proffered as an expert in the standard of care, and his conclusory testimony is irrelevant and inadmissible.

35. During Dr. Kelly's course of caring for Plaintiff, as documented by the notes in his chart, Plaintiff was never at serious risk of harm to himself based upon Dr. Kelly's treatment with medications (Ex. 4, pgs. 81 1. 19- pg. 82 1. 6).

**RESPONSE:** Denied. As an inmate in a maximum security male prison, Mr. Gulley faces a serious risk of harm to himself due to the presence of enlarged breasts caused by Dr. Kelly's treatment with medications. (Gulley St. of Add'l. Facts ¶14)

36. Plaintiff repeatedly told Dr. Kelly that he did not have enlarged breasts. Absent any complaints of gynecomastia symptoms, there would be no need to conduct a physical examination of Plaintiff by Dr. Kelly (Ex. 4, pg. 85 l. 1-9).

    **RESPONSE:** Admit that Gulley did not complain of enlarged breasts to Dr. Kelly, but state that Mr. Gulley did complain to Dr. Kelly of restlessness, dry mouth, muscle stiffness, tremors, and other well-known side effects of Risperdal, despite having not been warned about any side effects when he was first prescribed Risperdal, thereby putting Dr. Kelly on notice that Mr. Gulley was prone to Risperdal's potential side effects, which include gynecomastia. (Gulley St. of Add'l. Facts ¶ 17)

37. It is Dr. Kelly's opinion that he provided sufficient information about the potential treatment of Plaintiff with Risperdal for Plaintiff's mental health symptoms on each clinical visit (Ex. 4, pg. 85 l. 15-20).

    **RESPONSE:** Objection FRE 402, 702. Dr. Kelly has not been qualified or proffered as an expert in the standard of care, and his conclusory testimony is irrelevant and inadmissible.

38. Dr. Kelly's opinion is that his care of Plaintiff complied with the psychiatric standard of care (Ex. 4, pg. 86 l. 4-13).

    **RESPONSE:** Objection FRE 402, 702. Dr. Kelly has not been qualified or proffered as an expert in the standard of care, and his conclusory testimony is irrelevant and inadmissible.

39. To Dr. Kelly's knowledge no one ever diagnosed Plaintiff with gynecomastia during the period of time that Plaintiff was under Dr. Kelly's care (Ex. 4, pgs. 86 l. 24- pg. 87 l. 7).

    **RESPONSE:** Admitted that Dr. Kelly so testified.

40. Plaintiff can't say when he first complained of chest pain, throbbing and lopsided breasts, nor can he state when these symptoms began or when he first sought treatment for these symptoms (Ex. 2, pgs. 36 l. 14-21, pg. 107 l.15-17).

    **RESPONSE:** Admitted.

41. Plaintiff was first told that he had gynecomastia by Dr. Okezie, but he does not remember the date he was so informed (Ex. 2, pgs. 40 1. 1-15).

    **RESPONSE**: Admitted that Mr. Gulley could not recall the exact date of his examination by Dr. Okezie but cited the medical records that establish June 29, 2018 as the date.

42. Dr. Okezie saw Plaintiff on June 29, 2018 (Ex. 5 pg. 13 1. 10-16) after beginning his employment with Wexford in 2018 (Ex. 3 pg. 1133; Ex. 5, pgs. 15 1. 12-22).

    **RESPONSE**: Admitted.

43. Dr. Okezie noted on June 29, 2018 that Plaintiff complained of gynecomastia (Ex. 5, pgs. 15 1. 19- pg. 16 1. 9). Dr. Okezie performed a physical examination including an examination of Plaintiffs breasts (Ex. 5, pgs. 16 1. 12- pg. 17 1. 2). Dr. Okezie diagnosed Plaintiff with gynecomastia (Ex. 5 pg. 24 1.1-7).

    **RESPONSE**: Admitted.

44. Dr. Okezie had no opinion regarding the cause of Plaintiff's symptoms (Ex. 5, pgs. 25 1. 5-11, pg. 30 1. 20-24; Ex. 3, pg. 1133; Ex. 5, pgs. 28-30).

    **RESPONSE**: Admitted that Dr. Okezie had no opinion to a reasonable degree of medical certainty as to the cause of Mr. Gulley's gynecomastia but did identify Risperdal as a potential cause of the condition.

45. Plaintiff recalls being informed in writing of gynecomastia by Nurse Nathan on March 8, 2017 (Ex. 2, pgs. 67 1. 15-18, pg. 92 1. 12-22). That was when Nurse Nathan told him of the side effects of Risperdal (Ex. 2, pg. 14 1.7-11, pg. 92 1. 12-18). Plaintiff's only visit with Nurse Nathan was on March 8, 2017 (Ex. 2, pg. 97 1. 19- pg. 98 1. 16; Ex. 3, pgs. 1573-1578).

    **RESPONSE**: Admit that Nurse Nathan informed Mr. Gulley that gynecomastia can be a side effect of Risperdal during their only visit on March 8, 2017 but deny that he received that information in writing. (Gulley St. of Add'l. Facts ¶ 15)

46. On April 22, 2015 when Dr. Kelly prescribed Risperdal, Plaintiff did not ask about side effects (Ex. 2, pg. 72 1. 13-20). He did sign a consent form (Ex. 2, pg. 74 1. 23- pg. 75 1. 9).

11

> **RESPONSE:** Admit that Mr. Gulley did not ask about possible side effects of Risperdal because he trusted Dr. Kelly and signed a consent form without reading it and without being informed of any possible side effects. (Gulley St. of Add'l. Facts ¶¶ 9-13)

47. In 2016, Plaintiff was 5'8" tall and weighed 230 lbs. Ex. 2 pg. 84 1. 21- pg. 85 1. 2. The Remeron prescription caused him to gain weight through as high as 250lbs (Ex. 2, pg. 85 1. 6-13). Plaintiff's date of birth is July 30, 1968 (Ex. 2, pg. 28 1. 22-23).

    **RESPONSE:** Admit that Mr. Gulley was born on July 30, 1968 and that in 2016 he was 5'8" tall and weighed approximately 230 lbs., and that Mr. Gulley speculated that a weight increase to 250 pounds may have been attributable to Remeron.

48. Plaintiff began to see Dr. Kartan for psychological care beginning November 12, 2016. Dr. Kartan on that date continued the prescription for Risperdal (Ex. 2, pgs. 114 1. 24-pg. 115 1. 4).

    **RESPONSE**: Admitted.

49. Subsequent to Dr. Kelly's retirement, Plaintiff continued to receive psychiatric care and prescription medication, including Risperdal, with care provided by Dr. Kartan. Dr. Kartan continued to prescribe Risperdal at the same dosage (2 mg) on the November 12, 2016 visit and on March 8, 2017, only reducing that dosage to 1 mg of Risperdal on April 2, 2017 (Ex. 3, pgs. 1557, 1573, 1581).

    **RESPONSE:** Admitted.

## GULLEY'S LOCAL RULE 56.1(b)(3) STATEMENT OF ADDITIONAL FACTS

1. Louis Gulley was born on July 30, 1968 in Rockford, Illinois. He dropped out of school in the 9th grade. (Def. Ex. 2, Gulley Dep. 28:22-29:10)

2. Mr. Gulley is not a physician and has no medical training. (Def .Ex. 2, Gulley Dep. 16:2-22; 23:5-15)

3. Dr. Kelly considers gynecomastia to be a rare side effect of Risperdal. (Def. Ex. 4, Kelly Dep. 20:7-11)

12

4. Wexford categorized drugs for possible prescription to inmates as preferred or non-preferred, based on cost, efficacy, side effect profile, and other factors. Risperdal was Wexford's preferred mood-stabilizing agent. (Def. Ex. 4, Kelly Dep. 22:9-22)

5. Dr. Kelly first treated Mr. Gulley on February 24, 2015. (Def. Ex. 4, Kelly Dep. 32:6-33:4; Gulley Ex. 1 at 0682, 01471.)

6. Dr. Kelly prepared documentation following each of his meetings with Mr. Gulley but Mr. Gulley did not review those notes contemporaneously and did not know what Dr. Kelly wrote until Gulley requested copies of his records (Def. Ex. 2, Gulley Dep. 80:22-81:5)

7. Dr. Kelly first prescribed Risperdal to Mr. Gulley during his second appointment on April 22, 2015. The Offender Outpatient Progress Notes from that visit state that Mr. Gulley said he was experiencing psychotic symptoms and wanted medication for those symptoms. (Def. Ex. 4, Kelly Dep. 34:13-18; Gulley Ex. 1 at 00916.)

8. Mr. Gulley signed a Mental Health Treatment Plan dated April 22, 2015 that lists three drugs to be administered as part of that plan: Risperdal, Remeron, and Depakote. The Plan document does not identify any possible side effects of the drugs. (Def. Ex. 4, Kelly Dep. 40:16-41:3; Gulley Ex. 1 at 01479.)

9. Dr. Kelly did not inform Mr. Gulley of the possible side effects of the three drugs when he first prescribed them to him. (Def. Ex. 2, Gulley Dep. 52:20-55:2) Mr. Gulley did not question Dr. Kelly about possible side effects of the medications because he trusted Dr. Kelly. (Def. Ex. 2, Gulley Dep., 49:11-18)

10. Mr. Gulley did not know the possible side effects of Risperdal, Remeron, and Depakote when they were prescribed to him and did not know when or whether he was experiencing side effects from the drugs. (Def. Ex. 2, Gulley Dep. 80:4-11; 82:22-83:5; 87:14-88:6; 91:17-92:11)

11. Mr. Gulley was asked to sign the consent form to indicate that he agreed with the treatment plan and the use of the medication for treatment. (Gulley Ex. 1 at 01479.)

12. The form does not identify gynecomastia or any other condition as possible side effects of Risperdal. (Gulley Ex. 1 at 01479.)

13. When Mr. Gulley initially signed the consent form for administration of Risperdal, Depakote, and Remeron, he did not first read it before signing and was not sure what the document was for but signed it because Dr. Kelly told him to sign it. (Def. Ex. 2, Gulley Dep. 26:6-27:7)

14. Dr. Kelly never informed Mr. Gulley that gynecomastia is a possible side effect of Risperdal. (Def. Ex. 2, Gulley Dep. 14:21-15:10; 68:2-14.) Mr. Gulley would have remembered if he had been warned of the risk of developing gynecomastia because as an

13

inmate in a maximum security male prison the presence of enlarged breasts could endanger an inmate. (Def. Ex. 2, Gulley Dep. 84:14-20; 95:12-22)

15. Mr. Gulley did not learn that gynecomastia was a potential side effect of Risperdal until Nurse Nathan orally informed him of that fact on March 8, 2017 when she also provided him with a copy of the Psychotropic Medication Information Brochure. (Def. Ex. 2, Gulley Dep. 76:19-77:16; 92:12-22; 97:19-100:24)

16. Dr. Kelly visited Mr. Gulley on June 17, 2015, September 23, 2015 and January 12, 2016, and each time he continued Mr. Gulley's prescription for Risperdal. (Gulley Ex. 1 at 01487, 01495, 01521)

17. In the Mental Health Progress Notes Dr. Kelly prepared to summarize each of his visits with Mr. Gulley prior to April 27, 2016, Dr. Kelly, he did not state that he warned Mr. Gulley that gynecomastia was a possible side effect of taking Risperdal. The Notes did record that Mr. Gulley was experiencing other side effects of Risperdal, including dry mouth, dizziness, and tremors. (Gulley Ex. 1 at 01487, 01495, 01497, 01521, 01531)

18. Nor did the consent forms that Mr. Gulley signed for those visits identify gynecomastia as a possible side effect of Risperdal. (Gulley Ex. 1 at 01481, 01498)

19. Dr. Kelly never conducted a physical examination of Mr. Gulley, never observed Mr. Gulley when his shirt was removed, and never felt Mr. Gulley's breasts to determine whether they were enlarged. (Def. Ex. 4, Kelly Dep. 46:5-47:11)

20. Dr. Kelly visited Mr. Gulley on April 24-27, 2016 and Dr. Kelly wrote in the Mental Health Treatment Plan from that visit for the first time that Dr. Kelly warned Mr. Gulley that gynecomastia was a potential side effect of Risperdal. (Gulley Ex. 1 at 01533)

21. Although Dr. Kelly apparently believes that he may have warned Mr. Gulley orally that gynecomastia was a potential side effect of Risperdal at previous appointments, he did not document any such warnings in writing until April 27, 2016, which was more than one year after he first prescribed Risperdal to Mr. Gulley. (Gulley Ex. 1 at 01533)

22. Although Dr. Kelly considers gynecomastia to be a rare side effect, in his notes from the April 27, 2016 visit and from other earlier visits he specifically references "no gynecomastia." (Def. Ex. 4, Kelly Dep. 63:18-65:7; Gulley Ex. 1 at 01531, 01533)

23. On April 27, 2016 Dr. Kelly provided Mr. Gulley with the IDOC Psychotropic Medication Information Sheet (Gulley Ex. 2) which was the first time Mr. Gulley was informed of some of the possible side effects of Risperdal, which was listed as an atypical neuroleptic medication. (Def. Ex. 2, Gulley Dep. 54:16-55:2)

24. Risperdal is classified as an atypical neuroleptic, a family of antipsychotic medications developed in the 1990's whose side effects typically may include sedation, restlessness,

14

dry mouth, muscle stiffness, tremor, abnormal muscular movements, sexual dysfunction, elevated lipids, elevated blood sugar, and heart irregularities. (Def. Ex. 4, Kelly Dep. 17:18-20:1; Gulley Ex. 2)

25. Neither the IDOC Psychotropic Medication Information Sheet (Gulley Ex. 2) nor Dr. Kelly informed Mr. Gulley that gynecomastia was a possible side effect of Risperdal. (Def. Ex. 2, Gulley Dep. 52:20-53:19)

26. After learning of the non-gynecomastia side effects of Risperdal, Mr. Gulley informed Dr. Kelly that he wanted to discontinue taking the medication. (Def. Ex. 2, Gulley Dep. 46:20-47:10.) Dr. Kelly told Mr. Gulley that he could not quit cold turkey because he would suffer a chemical imbalance and so would need to taper down his consumption of the medication. (Def. Ex. 2, Gulley Dep. 11:14-21; 54:16-55:2; 76:2-18; 115:12-22)

27. Mr. Gulley would not have agreed to taking Risperdal if he had known of the possible side effects when it was first prescribed to him. (Def. Ex. 2, Gulley Dep. 72:13-74:9)

28. The last time Dr. Kelly treated Mr. Gulley was June 15, 2016. At that final visit, Dr. Kelly again documented that Mr. Gulley had no gynecomastia and continued his prescription of Risperdal. (Def. Ex. 4, Kelly Dep. 78:2-79:7; Gulley Ex. 1 at 01541)

29. Subsequent to Dr. Kelly's visit with Mr. Gulley in June 2016, Dr. Kartan on November 12, 2016 continued Dr. Kelly's medication plan of prescribing 2 mg of Risperdal to Mr. Gulley. (Gulley Ex. 1 at 01551-01560)

30. On March 8, 2017, Nurse Nathan noted in the Psychiatric Progress Notes of her visit with Mr. Gulley that Mr. Gulley was concerned that his prescribed medications were "making him have stiff muscles (side effect of Risperdal)". Nurse Nathan recommended that Mr. Gulley's Risperdal prescription be discontinued. (Def. Ex. 2, Gulley Dep. 100:17-24; Gulley Ex. 1 at 01573-01578)

31. On April 2, 2017, Dr. Kartan treated Mr. Gulley and reduced the amount of Risperdal prescribed to Mr. Gulley from 2 mg to 1 mg for six months. (Gulley Ex. 1 at 00922, 01581-01587)

32. On April 6, 2017, T. Tomaras documented that Mr. Gulley had refused all his medication for four days. (Gulley Ex. 1 at 01591)

33. On April 8, 2017, Stateville medical professional documented that Mr. Gulley complained that his "right chest hurts" and said his nipple was leaking. (Gulley Ex. 1 at 00728)

34. On April 11, 2017, Stateville medical professional documented that Mr. Gulley complained of nipple discharge and discomfort. (Gulley Ex. 1 at 00730)

35. Mr. Gulley sought medical treatment after experiencing chest pain and noticing that his chest was lopsided with his right side bigger than his left and noting changes in his nipple. (Def. Ex. 2, Gulley Dep. 36:3-38:20)

36. On April 20, 2017, Nurse A. Russell documented that Mr. Gulley reported that he was not taking his medications because he was concerned about developing "breast tissue" and reported chest/muscle pains. (Gulley Ex. 1 at 01593) Nurse Russell fills out a mental health services referral form stating that Mr. Gulley is requesting that his treatment with Risperdal and Depakote be discontinued because of their side effects. (Gulley Ex. 1 at 01607)

37. On April 25, 2017, Dr. Kim documented that Mr. Gulley complained that he did not "like side effects with Risperdal-breast enlargement." Dr. Kim discontinued Mr. Gulley's treatment with gynecomastia. (Gulley Ex. 1 at 01609)

38. After experiencing pain and soreness in his right breast for some period of time, Mr. Gulley was examined by Dr. Christian Okezie on June 29, 2018. (Gulley Ex. 1 at 01133)

39. Dr. Okezie attended college and received his medical training at the University of Ibadan in Nigeria. After relocating to the United States, Dr. Okezie went into correctional care medicine and started working for Wexford in 2018. (Def. Ex. 5, Okezie Dep. 10:1-13)

40. In response to Mr. Gulley's complaint that his breasts were swollen, Dr. Okezie conducted a chest examination with Mr. Gulley's shirt removed and found that Mr. Gulley's right breast was larger than the left. (Def. Ex. 2, Gulley Dep. 41:15-43:10; Def. Ex. 5, 15:12-23:2; Gulley Ex. 1 at 01133)

41. After finding that Mr. Gulley's breasts were swollen and lopsided, Dr. Okezie diagnosed Mr. Gulley with bilateral gynecomastia and noted that Mr. Gulley was on Risperdal medication which has a tendency to cause gynecomastia. (Def. Ex. 2, Gulley Dep. 41:15-43:10; Def. Ex. 5, Okezie Dep. 15:12-23:2; Gulley Ex. 1 at 01133)

42. In his records from that examination, Dr. Okezie noted that Mr. Gulley was at the time taking Risperdal medication and that Risperdal has a tendency to cause gynecomastia. Medical literature confirms that Risperdal has a tendency to cause gynecomastia as one of its side effects. Dr. Okezie has diagnosed other of his patients with gynecomastia. (Def. Ex. 5, Okezie Dep. 20:11-26:10)

43. After his diagnosis of Mr. Gulley, Dr. Okezie recommended that the prescribing psychiatrists consider discontinuing or modifying Mr. Gulley's prescription for Risperdal. (Def. Ex. 5, Okezie Dep. 24:14-26:10)

44. Having swollen breasts drew the attention and ridicule of other inmates, who made sexual comments about Mr. Gulley's breasts. Mr. Gulley's swollen breasts made him feel uncomfortable and fearful while using the communal prison shower and walking in the

    prison yard. (Def. Ex. 2, Gulley Dep. at 97:5-8, 157:13-158:8, 160:10-17; Def. Ex. 3 at 01771.)

45. Having swollen breasts while confined to an all-male, maximum security penitentiary put Mr. Gulley in fear of assault and rape. (Def. Ex. 2, Gulley Dep. at 95:16-22.)

                                    Respectfully Submitted,

                                    By: /s/ Richard P. Steinken
                                    *One of the Attorneys for Plaintiff*

William D. Heinz
wheinz@jenner.com
Richard P. Steinken
rsteinken@jenner.com
Theo A. Lesczynski
tlesczynski@jenner.com
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654-3456
Tel: 312-222-9350

17

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 2, 2021 I caused the foregoing document to be filed electronically with the Clerk of the Court through ECF and to be served upon all counsel of record by filing the same with the CM/ECF system.

                                            By:    s/ Theo A. Lesczynski