UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LOUIS GULLEY, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:17-CV-08209 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| JONATHAN KELLY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Louis Gulley, a prisoner at Stateville Correctional Center, brings this civil-rights lawsuit, 42 U.S.C. § 1983, alleging a violation of his right to constitutionally adequate medical care under the Eighth Amendment.[1] R. 58, First Am. Compl ¶¶ 1, 5.[2] Gulley claims that a psychiatrist who worked at Stateville, Dr. Jonathan Kelly, prescribed the antipsychotic Risperdal without advising Gulley of its potential side effects. *Id.* ¶¶ 2, 7. According to Gulley, the Risperdal medication caused gynecomastia, a medical condition that results in excessive growth of mammary glands and breast tissue. *Id.* ¶¶ 10–11. Kelly has now moved for summary judgment. R. 121, Summ. J. Mot. The motion is granted: even when viewing the evidence in the light most favorable to Gulley, no jury could find that Kelly acted with deliberate indifference.

---

[1]The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331.
[2]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

## I. Background

In deciding Kelly's motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Having said that, when Gulley fails to present facts properly under Local Rule 56.1, the Court may deem Dr. Kelly's facts to be admitted and set aside Gulley's assertions. *See Delapaz v. Richardson*, 634 F.3d 895, 899–900 (7th Cir. 2011) (describing the importance of Local Rule 56.1 and the trial court's enforcement of it). The facts below are undisputed unless otherwise noted, in which case the evidence is viewed in Gulley's favor (so long as he properly presented evidence under Local Rule 56.1).

Gulley has been incarcerated at Stateville Correctional Center since 2013. DSOF ¶ 4.[3] Dr. Kelly was employed as a licensed psychiatrist at Stateville by Wexford Health Sources, Inc., between 2011 and 2016 (he retired thereafter). *Id.* ¶¶ 2, 5. From February 2015 through June 2016, Gulley met with Kelly seven times. *Id.* ¶ 6. Gulley first met Kelly in February 2015, when Gulley was evaluated for auditory and visual hallucinations. ¶ 7. Even before this visit, Gulley had been diagnosed with depression and prescribed Remeron and Depakote. *Id.* ¶ 8.

---

[3]Citations to the parties' Local Rule 56.1 Statements of Fact are as follows: "DSOF" for Kelly's Statement of Facts [R. 122], "Pl. Resp. DSOF" for Gulley's response to Kelly's Statement of Facts [R. 128], "PSOF" for Gulley's Statement of Additional Facts [R. 128 at 12–17], and "Def. Resp. PSOF" for Kelly's response to Gulley's Statement of Additional Facts [R. 130].

2

In April 2015, Kelly prescribed Risperdal to Gulley for the first time. DSOF ¶ 9; PSOF ¶ 7. Gulley had reported psychotic symptoms and expressed a desire for medication; Kelly diagnosed Gulley with bipolar disorder and psychotic disorder. *Id.* In addition to prescribing 2 mg of Risperdal per day, Kelly also increased Gulley's dosage of Depakote to 1500 mg per day and continued his dosage of Remeron at 15 mg per day. *Id.* Kelly memorialized a mental health treatment plan in a document. R. 125-3, Def.'s Exh. 3, Medical Records at 1482. Gulley signed the document, which said that Gulley agreed with the treatment plan and the medication used for the treatment. DSOF ¶ 10; PSOF ¶ 11. The treatment plan does not list gynecomastia or any side effects of Risperdal. PSOF ¶ 12.

The parties dispute whether Kelly informed Gulley of the possible side effects of Risperdal during the April 2015 visit. Kelly asserts that he explained various side effects of Risperdal, including gynecomastia, and obtained Gulley's consent to take the medication. DSOF ¶ 12; Def.'s Resp. PSOF ¶¶ 8, 9, 10, 14. Indeed, according to Kelly, not only did Kelly describe Risperdal's side effects during the April 2015 meeting, he also discussed potential side effects with Gulley during *each* visit pursuant to Kelly's standard practice. *Id.* But Gulley denies all this. According to Gulley, Kelly did not inform Gulley of any side effects at any time. Pl.'s Resp. DSOF ¶¶ 10, 12; PSOF ¶¶ 8, 9, 10, 14. Gulley alleges that he would have remembered if he had been warned of gynecomastia, because enlarged breasts could pose risks for an inmate in a maximum-security male prison. *Id; see* PSOF ¶ 45.

3

A couple of months later, in June 2015, Dr. Kelly performed a mental health examination on Gulley to determine his treatment progress and to track his compliance with medications. DSOF ¶ 13. The parties dispute whether Gulley reported side effects of using Risperdal during this visit. Kelly contends that Gulley complained of "dry mouth" but no other effects related to gynecomastia. DSOF ¶¶ 14, 16; Def.'s Resp. PSOF ¶¶ 17, 19. In contrast, Gulley asserts that he experienced and reported several side effects of Risperdal, including dizziness and tremors. PSOF ¶ 17.

Kelly next saw Gulley in September 2015. DSOF ¶ 21. The notes for this visit say that Gulley responded "don't know" when asked about side effects of his medications. *Id.* ¶ 22. Kelly wrote "no gynecomastia" based on Gulley's purported statement that his breast size had not increased. *Id.* Gulley again signed a medical form setting forth the same treatment plan from the April 2015 visit. *Id.* ¶ 24.

Around six months later, in January 2016, Kelly met with Gulley for another mental health examination. DSOF ¶ 25. In response to Gulley's reported auditory and visual hallucinations, paranoia, and mood swings, Kelly offered to increase the dose of Risperdal, but Gulley declined. *Id.* ¶ 25–26. The parties again dispute whether any side effects were discussed during this visit. *Id.* ¶ 26; Pl.'s Resp. DSOF ¶ 26.

In April 2016, Kelly met again with Gulley. DSOF ¶ 27. In addition to reporting psychotic symptoms, Gulley reported that he felt dizzy and experienced shaking in his right hand. *Id.* He denied any involuntary movements of his face, mouth, or other parts of his body. *Id.* The treatment notes again say that Gully has "no gynecomastia." Medical Records at 1531. Gulley again signed the treatment plan with a

4

Risperdal prescription. DSOF ¶ 29. Although Kelly contends that Gulley denied experiencing gynecomastia, Gulley maintains that he was never informed that Risperdal could cause gynecomastia. *Id.* ¶ 28; Pl.'s Resp. DSOF ¶ 27. Instead, Gulley maintains that this visit was the first time he was alerted to any side effects of Risperdal. According to Gulley, when he learned of the non-gynecomastia side effects, he informed Kelly that he wanted to discontinue the treatment plan but was persuaded by Kelly to continue the plan. PSOF ¶¶ 23, 26. Kelly denies that Gulley wanted to stop the prescription and denies persuading Gulley to stay on Risperdal. Def.'s Resp. PSOF ¶¶ 23, 26.

Gulley's final visit with Kelly happened in June 2016. DSOF ¶ 30. Kelly again documented that Gulley had no gynecomastia and continued his Risperdal prescription. DSOF ¶ 30; PSOF ¶ 28. Five months after the last visit with Kelly, Dr. Usha Kartan, another psychiatrist at Stateville, continued Kelly's treatment plan by prescribing 2 mg of Risperdal per day in November 2016. PSOF ¶ 29; *see* Medical Records at 1557. In March 2017, Gulley expressed concern that his muscles were stiff, which a nurse noted was a "side effect of Risperdal[.]" PSOF ¶ 30. The next month, in April 2017, Kartan reduced the amount of Risperdal prescribed to Gulley from 2 mg to 1 mg per day. *Id.* ¶ 31.

From April 2017 to June 2018, several medical professionals documented Gulley's complaints of chest pain, nipple discomfort, and breast development. PSOF ¶¶ 33–38. On June 29, 2018, Gulley complained of gynecomastia to Dr. Christian Okezie, a physician at Statesville, during a medical appointment. DSOF¶¶ 42–43;

5

PSOF ¶ 38. As a result, Okezie performed a chest examination on Gulley and found that his right breast was larger than his left breast. PSOF ¶ 40. Okezie diagnosed Gulley with bilateral gynecomastia and noted that Gulley was taking Risperdal at the time of the diagnosis. *Id.* ¶ 41, 42.

In November 2017, Gulley filed his initial complaint, R. 1, and eventually filed an amended complaint in October 2019, R. 58, First Am. Compl. After the close of discovery, Kelly moved for summary judgment. Summ. J. Mot.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986);

*Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

### A. Deliberate Indifference

Prison doctors violate the Eighth Amendment when they act with "deliberate indifference to [the] serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on a deliberate-indifference claim, a plaintiff must show two things: (1) "the deprivation alleged must be, objectively, sufficiently serious"; and (2) "the prison official must have a sufficiently culpable state of mind." *Thomas v. Martija*, 991 F.3d 763, 768 (7th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (cleaned up).[4] In other words, there is both an objective and subjective element to deliberate-indifference claims—the specific standard is whether the physician intentionally or recklessly disregarded a known, objectively serious medical condition that poses an excessive risk to an inmate's health. *Gonzalez v. Feinerman*, 663 F.3d 311, 313–14 (7th Cir. 2011). As that standard suggests, deliberate indifference requires more than mere negligence or medical malpractice. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). Even *objective* recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it should be

---

[4] This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

7

known—is not necessarily enough, because the plaintiff must show *subjective* awareness of the risk. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (cleaned up). Having said that, subjective recklessness of course can be proven with circumstantial evidence, including an inference arising from a physician's treatment decision when the decision is so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

Gulley asserts that Dr. Kelly violated the Eighth Amendment because the doctor "failed to advise Gulley of the substantial risk that he could develop gynecomastia as a result of his Risperdal use[.]" First Am. Compl. ¶¶ 33–39. Although it is not entirely settled whether there might be some modified formulation of the deliberate-indifference standard for failure to *warn* claims in particular, *see Phillips v. Wexford Health Sources, Inc.*, 522 F. App'x 364, 367 (7th Cir. 2013) (non-precedential disposition) (explaining in the context of a failure-to-warn claim that "we have not had occasion to comment on this precise standard"), the generally applicable standard still remains that the "Eighth Amendment protects inmates from deliberate indifference to *substantial* risks of serious damage to their health," *id.* (citing cases) (emphasis in original). So Gulley must show that Kelly's alleged failure to inform him of the link between Risperdal and gynecomastia posed a *substantial* risk to Gulley's health.

### B. Local Rule 56.1

Before examining whether there is enough evidence for a reasonable jury to find that the health risk was substantial, a threshold matter, Dr. Kelly argues that

Gulley has failed to comply with Local Rule 56.1, so many of Gulley's proposed additional statements of fact should be ignored (and correspondingly, many of the doctor's fact statements should be deemed admitted). R. 131, Def.'s Reply at 3–5. Local Rule 56.1 requires the non-movant both to respond to the movant's specific statement of facts and to offer a statement of additional facts:

> (2) a response to the LR 56.1(a)(2) statement of material facts that complies with LR 56.1(e) and that attaches any cited evidentiary material not attached to the LR 56.1(a)(2) statement; and
>
> (3) if the opposing party wishes to assert facts not set forth in the LR 56.1(a)(2) statement or the LR 56.1(b)(2) response, a statement of additional material facts that complies with LR 56.1(d) and that attaches any cited evidentiary material not attached to the LR 56.1(a)(2) statement or LR 56.1(b)(2) response.

Local Rule 56.1(b)(2), (3). Kelly argues that some of Gulley's fact statements are riddled with problems: they do not have proper citations, make objections before admitting the statement, and do not have evidentiary materials justifying their denial of Defendant's Statement of Facts. Def.'s Reply at 3–4. As Kelly notes, however, many of the objections have already been withdrawn or resolved by the parties. *Id.* at 4. On the remaining ones that make a difference, this Opinion will address them as needed.

### C. Informed Consent

Returning to whether Gulley has enough evidence to get to a jury, Kelly first argues that Gulley gave his consent to use Risperdal after Kelly informed Gulley of its potential side effects. R. 123, Def.'s Br. at 5–7; Def.'s Reply at 1–2. But this argument fails to grapple with a basic summary judgment requirement: the evidence must be viewed in the light most favorable to the non-movant. Gulley outright denies that

9

Kelly ever told Gulley about the potential for gynecomastia. Pl.'s Resp. DSOF ¶¶ 10, 12–14, 16, 27–29, 31, 33; PSOF ¶¶ 11–14. That assertion, based on Gulley's asserted personal knowledge, *must* be credited at summary judgment.

It is true that Gulley signed a treatment plan that detailed the type and quantity of medications he was prescribed. *See* Medical Records at 1133–1581. The written plan contained a disclaimer entitled, "Consent to Treatment." Medical Records at 1474, 1482, 1484, 1498, 1534**.** But the disclaimer does *not* list out the side effects of Risperdal; instead, the disclaimer is more general, with one paragraph addressing generic consent and the other affirming that the patient understands what *refusal* to the treatment would mean:

> I voluntarily consent/accept that I receive treatment provided by the below listed professional and their designated assistants. My signature below constitutes formal acceptance of therapeutic services. I understand that this consent is voluntary and I may revoke my consent at any time. I also understand my right to grieve this plan at any time.
>
> The nature and extent of the intended and probable consequences of refusal have been explained to me.

*Id*. So there is nothing about the disclaimer that undermines Gulley's repeated denials that Kelly informed him of any of *side effects* during their initial visit. *See* Pl.'s Resp. DSOF ¶¶ 10, 12; PSOF ¶¶ 8–15. And, more broadly beyond the disclaimer, neither Gulley's written treatment plan nor his medical records otherwise contain a warning about the medications' side effects. *See generally* Pl.'s Medical Records; *see* R. 128-1, Pl.'s Exh. 1 at 1479.

Indeed, in his sworn deposition, Gulley avers that Kelly "never told me the side effects of the medication that I was taking." R. 125-2 (sealed), Dep. of Louis E. Gulley at 53:01–02; *see id.* at 53:07 (emphasizing "never"). Only on their April 2016 visit does Gulley concede that Kelly gave him any information concerning the medications' potential side effects. *See id.* at 53:12–19, 54:17–55:02. But that information did not cover gynecomastia: Gulley maintains that Kelly *never* told him that Risperdal could cause gynecomastia. *See id.* at 14:23–15:01; 68:02–08 ("Dr. Kelly *never* told me about gynecomastia. … Dr. Kelly *never* examined me.") (emphasis added); PSOF ¶ 14. Those under-oath statements about a point on which Gulley would have personal knowledge *must* be credited at the summary judgment stage. On top of those denials, Gulley also argues that he would have remembered a warning about gynecomastia given the dangers that enlarged breasts would pose in a maximum-security penitentiary: "[I]f you tell me I'm taking some medication that's going to grow me some breasts, I would remember that." Gulley Dep. at 84:16–20; *see id.* at 95:16–22 (expressing fear of rape because of gynecomastia). It was not until March 2017, *after* Kelly had retired and had stopped treating Gulley, DSOF ¶¶ 2, 5, when someone (a nurse practitioner) informed Gulley that Risperdal could cause gynecomastia. PSOF ¶ 15 (nurse provided medical brochure with the information); *see* Gulley Dep. at 76:02–77:16. When viewing the evidence in Gulley's favor, there is a genuine dispute over whether Kelly told Gulley about the potential side effect.

**D. Whether the Risk of Gynecomastia was Substantial**

But even if Dr. Kelly failed to inform Gulley about the risks of Risperdal, Gulley must present enough evidence (when viewed in his favor) that this failure posed a *substantial* risk to Gulley's health. On this element of the deliberate-indifference claim, the evidence falls short.

The facts of this case mirror those in *Williams v. Kelly*, in which an inmate at Stateville developed gynecomastia after Dr. Kelly prescribed Risperdal. 2018 WL 1911820, at *1 (N.D. Ill. Apr. 23, 2018), aff'd, 777 F. App'x 162 (7th Cir. 2019). The inmate there (a prisoner named Williams) was already on a Risperdal prescription before he met Kelly, but Kelly continued the prescription. *Id.* After two years of treatment, Kelly discontinued Risperdal when he observed Williams developing gynecomastia. *Id.* at *2. The Seventh Circuit affirmed summary judgment for the physician-defendants because Williams did not present "any admissible evidence of the *magnitude* of the risks of taking Risperdal long-term." *Williams*, 777 F. App'x at 163 (emphasis added).[5]

---

[5] It is worth noting that the Seventh Circuit's reasoning in *Williams* is persuasive, but Kelly relies on the district court's opinion in that case for an overbroad contention. Kelly quotes the district court's decision, which said that under Illinois law, a doctor "uses his medical judgment in deciding what information and warnings he or she will provide the patient." *Williams*, 2018 WL 1911820, at *5 (quoting *Happel v. Wal-Mart Stores, Inc.*, 737 N.E.2d 650, 655 (Ill. App. Ct. 2000) *aff'd* 766 N.E.2d 1118 (Ill. 2002)) (cleaned up); *see* Def.'s Br. at 8–9. But that quotation cannot mean that a doctor is rendered completely immune from any Eighth Amendment liability just because side-effect warnings are a matter of "medical judgment." In *Happel*—the case quoted by the district court in *Williams*—the Illinois Appellate Court was explaining why the learned intermediary doctrine prevented a liability finding against a drug manufacturer. *Id.* Because doctors use "medical judgment" in deciding what warnings to provide to their patients, doctors are learned intermediaries between drug manufacturers and patients. *Id.*; *see Kirk v. Michael Reese Hospital & Medical Center*, 513 N.E.2d

So too here. Gulley fails to offer sufficient evidence on the magnitude of the risk that Risperdal poses in developing gynecomastia. He points to no scientific studies, expert declarations, or other evidence on which a jury could find that there is a *substantial* probability that Risperdal caused Gulley's gynecomastia. No record evidence explains even the *general* risk of gynecomastia arising from taking Risperdal, let alone what is the *specific* risk based on the dosage and duration of Gulley's Risperdal intake. Without any evidence to evaluate the magnitude of the risk, "no reasonable jury could conclude that [Kelly's] failure to warn was reckless." *Williams*, 777 F. App'x at 164. To be clear, there of course is no blanket requirement that a § 1983 plaintiff *must* introduce expert testimony on risks in every deliberate-indifference case. There might very well be cases and medical conditions for which circumstantial evidence, like admissions from a healthcare provider, would be enough on its own so that a jury may infer the magnitude of the risk. This is not that kind of case.

Indeed, if anything, even though Kelly does not bear the burden of proof, he relies on medical literature to show that a "high dose of Risperdal" is required "for the rare side effect of gynecomastia." R. 125-4, Def.'s Exh. 4, Dep. of Jonathan Kelly, M.D. at 82:07–12. Because a "high" dose is defined as 6 to 8 mg of Risperdal per day, *id.* at 82:15–20, Kelly's 2-mg-per-day prescription was well under what would be considered a "high" dose. Kelly (himself a qualified psychiatrist) testified that he prescribed Gulley "the lowest dose in the therapeutic dose range." *Id.* at 83:03–06; *see*

---

387, 393 (Ill. 1987). So *Williams* was not establishing some general immunity principle for *doctors* when they decide what side effects to disclose.

DSOF ¶¶ 18–20.[6] It matters too that after Kelly retired, Dr. Kartan maintained the 2 mg prescription from November 2016 to April 2017. PSOF ¶¶ 29, 31.

The evidence offered by Gulley falls well short of generating a genuine dispute of fact on the risk of gynecomastia.[7] First, he contends that Kelly himself admitted that gynecomastia is an issue of "concern" for a patient on Risperdal. Pl.'s Resp. at 9. But the context of the purported admission undermines Gulley's argument. In saying that the medical literature describes gynecomastia as "a side effect of concern," Kelly Dep. at 51:24–52:05, Kelly also testified that gynecomastia is a "rare" and "not a primary" side effect of Risperdal, *Id.* at 20:09–10, 76:02–03; *see id.* at 74:22–24 ("gynecomastia is not one of the main reasons why patients stop using Risperdal"). Gulley did not otherwise elicit from Kelly any further explanation of the magnitude of the risk posed by a side effect of "concern," nor any explanation on the risk specific to Gulley's situation, such as the dosage and duration of the Risperdal prescription. So, within this context, a concession that gynecomastia is a side effect of "concern" would not give a reasonable jury a basis to find that the risk was *substantial*.

---

[6]Gulley objects to the facts set forth in DSOF ¶¶ 18–20, arguing that "Dr. Kelly has not been proffered or qualified as an expert in medical practice or pharmacology[.]" Pl.'s Resp. DSOF ¶¶ 19–20, *see* R. 131-1, Def.'s Reply Exh. 1, Rule 56.1 Email at 1. But Kelly is a licensed psychiatrist and has substantial experience and expertise in prescribing Risperdal, so this objection is overruled. *See* R. 131-2, Def.'s Reply Exh. 2, Rule 26(a)(2)(C) Disclosures.

[7]The Court notes that Gulley "could have asked the court to pre-authorize the payment for such an expert from a district court fund under Local Rule 83.40" but did not do so. *Stevenson v. Windmoeller & Hoelscher Corp.*, 39 F.4th 466, 472 (7th Cir. 2022). As the Seventh Circuit in *Stevenson* held, it was "[Gulley's] burden, not the court's" to provide expert opinion demonstrating a disputed material fact. *Id.* at 473.

Gulley's only other piece of evidence on the magnitude of the risk is the fact that on Gulley's medical-appointment notes, Kelly wrote that no gynecomastia was developing, and Kelly did not write notes about any other Risperdal side effects. Pl.'s Resp. at 9. It is true that circumstantial evidence of this sort might very well provide a basis to infer that Kelly knew there was *some* risk of gynecomastia. But the mere fact of the notation still does not provide a reasonable basis to evaluate how substantial the risk of gynecomastia was, whether generally for all patients or specifically for Gulley. It is one thing to view the evidence in the light most favorable to the plaintiff; it is quite another to rely on the bare fact of the medical-appointment notations to conclude that the risk was substantial. Gulley has not provided enough evidence that Kelly "knew of and disregarded a *substantial* risk of serious harm to [Gulley's] health." *Williams*, 777 F. App'x at 163 (emphasis added).

### E. Causation

The gaps in the evidence on the magnitude of the risk also undermine Gulley's attempt to show that the gynecomastia was caused by Kelly's Risperdal prescription. This is an independent reason to grant summary judgment. Gulley points to the temporal link between Kelly's prescription of Risperdal in April 2015 to the formal gynecomastia diagnosis in June 2018. Pl.'s Resp. at 13–14. Although causation for a deliberate-indifference claim is "typically a question reserved for the jury[,]" summary judgment on causation is justified where a plaintiff can proffer no evidence that the defendant's action or inaction "exacerbated an injury." *Stockton v. Milwaukee Cnty.*, 44 F.4th —, 2022 WL 3210359, at *5 (7th Cir. Aug. 9, 2022) (cleaned up).

15

Here, again, Gulley has no medical-expertise evidence to dispute that gynecomastia is a rare side effect of Risperdal, made rarer still by the low dosage he was given. *See* Kelly Dep. at 20:09–10, 76:02–03, 83:03–06. And Dr. Okezie, the physician who diagnosed Gulley with gynecomastia, averred that he did not know if Risperdal was the definitive cause of Gulley's gynecomastia. R. 125-5, Def.'s Exh. 5, Dep. of Dr. Christian Okezie at 25:05–11. What's more, even if Risperdal did cause Gulley's gynecomastia, Gulley still must have enough evidence to show that it was *Kelly*'s prescription (as opposed to Dr. Kartan's or Dr. Okezie's) that caused it. The closest that Gulley comes on this point is that he reported "restlessness, dry mouth, muscle stiffness, tremors, and *other well-known side effects* of Risperdal" during Kelly's care. Pl.'s Resp. at 14; PSOF ¶ 17 (emphasis added). An examination of the medical notes that underlies this proposition, however, shows that Kelly recorded that Gulley complained only of dry mouth, dizziness, and shaking of his right hand. *See* Def.'s Resp. PSOF ¶ 17; Pl.'s Exh. 1 at 1487, 1495, 1497, 1521, 1531. Gulley does not otherwise aver that he complained of enlarged breasts while under Kelly's care. So, for all a jury would know, either Kartan's or Okezie's Risperdal prescriptions acted as the "intervening cause" of the gynecomastia, thus rendering Kelly not liable. *See Kemper v. Deutsche Bank AG*, 911 F.3d 383, 393 (7th Cir. 2018); *Herzog v. Vill. of Winnetka*, 309 F.3d 1041, 1044 (7th Cir. 2002) ("[T]he ordinary rules of tort causation apply to constitutional tort suits."). Gulley's deliberate-indifference claim fails on causation grounds too.

## IV. Conclusion

For the reasons explained in this Opinion, Kelly's motion for summary judgment is granted. The status hearing of October 14, 2022, is vacated. Final judgment will be entered. The Court expresses its gratitude to recruited counsel for their able service in providing *pro bono* representation to a client who otherwise would have gone without assistance.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 2, 2022